In re BLEDSOE.

S. C. B. D. No. 444. Nov. 21, 1939.

*97 P. 2d 556.*

Rehearing Denied Dec. 19, 1939.

Yancey, Spillers & Bush, of Tulsa, for applicant.

OSBORN, J. William Alberty Bledsoe has filed his application for admission to the bar of this state. It is his contention that he is entitled to a license to engage in the practice of law without the necessity of a written examination to determine his qualifications, which contention is predicated upon the provisions of section 4, art. 1, c. 22, Session Laws 1939, which act became effective on July 28, 1939. Section 4 provides as follows:

"Any graduate of any 'Grade A' law school as recognized by the Association of American Law Schools, National Association of Law Schools, or the American Bar Association, or by the Supreme Court of the State of Oklahoma, shall be admitted to the practice of law in the State of Oklahoma, without examination upon motion, by the Supreme Court of the State of Oklahoma, upon presenting to such court a diploma of such graduation and evidence of good moral character; 'Grade A' law school as used in this act shall mean and include any school which is a member of the Association of American Law Schools, National Association of Law Schools, or the American Bar Association, or by the Supreme Court of the State of Oklahoma; any applicant for admission, under the terms of this section, shall pay the same fee required of other applicants for admission."

Under the provisions of said section, the applicant, a graduate of the Tulsa Law School, would be entitled to admission to the bar upon motion without examination. The question presented here is whether or not the provisions of said act contravene any provision of the Constitution.

The argument of the applicant is presented under the following proposition:

"The Constitution of Oklahoma does not deprive the Legislature of the right to prescribe qualifications for the admission of lawyers to engage in the practice of law in this state, and there being no prohibition i n t h e Constitution, the Legislature has a right to prescribe the qualifications."

There is no provision of the Constitution which specifically fixes the authority for determining the qualifications for admission to the bar in either the legislative or the judicial branch of the government. The only applicable provision of the Constitution is section 1, art. 4, which is as follows:

"The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive and Judicial; and except as provided in this Constitution, the Legislative, Executive and Judicial Departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others."

It appears that a constitutional provision similar to our own relating to the

division of powers is found in the Constitutions of most of the states, and said provisions have been before the courts on numerous occasions in connection with the problem here presented. The Legislature is not without authority to prescribe qualifications for admission to the practice of law. Neither is such authority without limitation. The bounds of such authority are well stated in the case of In re Opinion of the Justices (Mass.) 180 N. E. 725, 81 A. L. R. 1050, wherein it was said:

"Numerous statutes have been passed making provision in aid of the judicial department in reaching a proper selection of those qualified for admission as attorneys to practice in the courts. It is not necessary to review them in detail. Like many other statutes, they have been enacted to enable the courts to perform their duties. They have been enacted, also, in the exercise of the police power to protect the public from those lacking in ability, falling short in learning, or deficient in moral qualities, and thus incapable of maintaining the high standard of conduct justly to be expected of members of the bar. No statute can control the judicial department in the performance of its duty to decide who shall enjoy the privilege of practicing law. Statutes hitherto enacted have been followed as the basis of its action. No contentions have arisen in the courts concerning their validity. Statutes respecting admissions to the bar, which afford appropriate instrumentalities for the ascertainment of qualifications of applicants, are no encroachment on the judicial department. They are convenient, if not essential, to enable the judicial department properly to perform this duty. The establishment, in 1897, of a state board of bar examiners, in place of the county boards previously existing, is an example. Statutes of that nature are valid provided they do not infringe on the right of the judicial department to determine who shall exercise the privilege of practicing in the courts and under what circumstances and with what qualifications persons shall be admitted to that end. *When and so far as statutes specify qualifications and accomplishments, they will be regarded as fixing the minimum and not as setting bounds beyond which the judicial department cannot go.* Such specifications will be regarded as limitations, not upon the judicial department, but upon individuals seeking admission to the bar. There is no power in the General Court (legislative body) to compel the judicial department to admit as attorneys those deemed by it to be unfit to exercise the prerogatives and to perform the duties of an attorney at law."

An example of a proper exercise of the legislative power in this regard is the State Bar Act, chapter 264, Session Laws 1929, which was a comprehensive act creating a State Bar and prescribing the duties and functions thereof. It is noted that the offices and duties designated by that act were merely to aid the court in the matter of admissions to the bar and in the imposition of disciplinary measures. The act did not purport to invade the province of the court in exercising the ultimate right to determine the qualifications of those who should be admitted to the practice of law. The constitutionality of that act was upheld in the case of State Bar of Oklahoma v. McGee, 148 Okla. 219, 298 P. 580.

In the recent case of In re Integration of the Oklahoma State Bar (decided October 10, 1939) 185 Okla. 505, 95 P. 2d 113, it was pointed out that the practice of law and the determination of when the right to practice has ceased are so intimately connected and bound up with the exercise of judicial power in the administration of justice that the right to define and regulate is inherent to the judicial department and belongs to the Supreme Court; that the term "inherent power of the judiciary" means that power which is essential to the existence of the dignity and functions of the judiciary. In the case of In re Integration of Nebraska's State Bar Association (Neb.) 275 N. W. 265, it was said:

"In State ex rel. Wright v. Barlow, 131 Neb. 294, 268 N. W. 95, we held that this court was vested with exclusive power to determine the qualifications of persons who may be permitted to practice law in this state, was possessed of the exclusive power to disbar licensed attorneys who have been unfaithful to the trust which the court reposed in them, to define the practice of law and to punish by con-

tempt proceedings persons not licensed to practice law for usurping the privilege of acting as attorneys. See, also, Rhode Island Bar Ass'n v. Automobile Service Ass'n, 55 R. I. 122, 179 A. 139, 100 A. L. R. 226; People ex rel. v. People's Stock Yards State Bank, 344 Ill. 462, 176 N. E. 901; Fitchette v. Taylor, 191 Minn. 582, 254 N. W. 910, 94 A. L. R. 356."

In the case of Re Application of Henry M. Day for Admission to the Bar, 181 Ill. 73, 54 N. E. 646, 50 L. R. A. 519, it was held:

"A statute overriding the rules of court respecting admission of attorneys, by requiring the admission of any person who began to study law before a specified date, provided he has obtained a diploma from a law school in the state after a specified period of attendance, or passed a satisfactory examination before an examining board, after a prescribed course of study, is an unconstitutional assumption by the Legislature of power properly belonging to the courts."

In the body of the opinion it was said:

"The function of determining whether one who seeks to become an officer of the courts, and to conduct causes therein, is sufficiently acquainted with the rules established by the Legislature and the courts governing the rights of parties and under which justice is administered, pertains to the courts themselves. They must decide whether he has sufficient legal learning to enable him to apply those rules to varying conditions of fact, and to bring the facts and law before the court, so that a correct conclusion may be reached. The order of admission is the judgment of the court that he possesses the requisite qualifications, under such restrictions and limitations as may be properly imposed by the Legislature for the protection and welfare of the public. The fact that the Legislature may prescribe the qualifications of d o c t o r s, plumbers, horseshoers, and persons following other professions or callings, not connected with the judicial system, and may say what shall be evidence of such qualifications, can have no influence on this question. A license to such persons confers no right to put the judicial power in motion or to participate in judicial proceedings. The attorney is a necessary part of the judicial system, and his vocation is not merely to find persons who are willing to have lawsuits. He is the first one to sit in judgment on every case, and whether the court shall be called upon to act depends on his decision. It is our duty to maintain the provision of the Constitution that no person, or collection of persons, being one of the departments of government, shall exercise a power properly belonging to another; and if the Legislature by inadvertence, as in this case, assumes the exercise of a power belonging to the judicial department, it should only be necessary to call their attention to the restraint imposed by the Constitution."

In 66 A. L. R. 1512, appears the following note:

"It is generally conceded that the Legislature may, in the exercise of its police power, prescribe rules and regulations for admission to the bar which the courts will follow; but such rules and regulations must not be unreasonable or deprive the c o u r t s of their inherent power to prescribe other rules and conditions of admission to practice."

In the light of the authorities to which we have referred, which clearly represent the overwhelming weight of authority, the above-quoted legislative act cannot stand. Insofar as section 4 of the act is concerned, the same does not purport to set out minimum qualifications, but instead fixes a maximum qualification and removes from the court the power to determine whether or not a certain group or class of persons possess qualifications which entitle them to admission to the bar. The act of the Legislature has the effect of attempting to qualify certain persons for admission to the bar, which is in excess of the legislative power.

The application for admission is denied.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, CORN, GIBSON, HURST, DAVISON, and DANNER, JJ., concur.