**Blanche BLACK, Appellant,**

v.

**BALL JANITORIAL SERVICE, INC., an Oklahoma corporation, Trans World Airlines, Inc., a corporation, City of Tulsa, a municipal corporation, and Tulsa Airports Improvement Trust, a public trust, Appellees.**

Nos. 62430, 62774.

Supreme Court of Oklahoma.

Dec. 9, 1986.

Phyllis DeWitt, Messrs. Beustring, Faulkner & Associates, Tulsa, for appellant.

Richard C. Honn, Edwin R. Reavis, Messrs. Rogers, Honn & Associates, Tulsa, for appellees, City of Tulsa and Tulsa Airports Imp. Trust.

OPALA, Justice.

The question presented for our review is whether the time intervals prescribed in the Political Subdivision Tort Claims Act [Act],[1] 51 O.S. 1981 §§ 151 et seq., for bringing an action against a public trust or a municipal corporation that was acting in its proprietary capacity when the harm occurred violate the Equal Protection Clause of the U.S. Constitution and the Due Process Clause in the U.S. and in the Oklahoma Constitution and whether these time intervals constitute special legislation that offends Art. 5 § 59, Okl.Const. We answer in the negative.

The plaintiff-appellant, Blanche Black [Black], alleged that on December 11, 1981 she slipped and fell at the Tulsa Interna-

---

1. The title of this act was changed in 1984 to "The Governmental Tort Claims Act," Okl. Sess.L. 1984, Ch. 226, § 1, eff. October 1, 1985 (51 O.S.Supp. 1984 § 151).

tional Airport [Airport] in front of the ticket counter operated by Trans World Airlines, Inc. and that on December 27, 1981 she gave written notice to the Airport Director of her injury from that fall.

Black commenced the present action on December 9, 1983. Two of the defendants, City of Tulsa [City] and Tulsa Airports Improvement Trust [Trust], separately demurred to her petition. They alleged that Black had failed to bring the action within the time limit prescribed in the Act, 51 O.S. 1981 § 156(C),[2] and thus her claim against them was barred. After Black elected to stand on her petition, the district court rendered judgment for the City and the Trust.

Black asserts error in this judgment. She contends that the § 156(C) time period then in force was tainted with an infirmity because the statute of which it formed a part [1] violated Oklahoma's constitutional prohibition against special legislation, Art. 5, § 59, Okl.Const.,[3] by including within its purview municipalities and public trusts when acting in a proprietary capacity and by excluding from its ambit unincorporated cities, townships or private-sector entities that perform the same function; [2] offended the Equal Protection Clause of the U.S. Constitution (a) by providing a shorter time period for the commencement of a tort action against a public tortfeasor than that which was then applicable to private tortfeasors and (b) by impermissibly extending the statute's provisions to public tortfeasors sued for an act or omission which occurred when the public entity was acting in the exercise of a proprietary function and [3] contravened the established notions of due process—state [4] and federal—by providing for an "intolerably short" limitation period for claims against public tortfeasors.

■ We recognize at the outset that there is a strong presumption which favors the constitutionality of legislative acts. The reviewing court will uphold the statute unless it is clearly, palpably and plainly inconsistent with our fundamental law.[5]

Challenged statutes that differentiate in the treatment given to one group as compared with that accorded to another are commonly tested for constitutional validity by ascertaining whether [1] there has been a denial of equal protection in the federal-law sense, [2] there was a taking of property without due process of law within the meaning of both the state and the federal fundamental law and [3] the enactment is tainted by an impermissible special legislation in the state-law sense.

■ In *Reirdon v. Wilburton Board of Education*,[6] we upheld the constitutionality of the Act's *notice* requirement. Classifications created by that provision were there the subject of an equal-protection

---

2. The terms of 51 O.S. 1981 § 156 (C) provided in pertinent part:
"* * * No action for any cause arising under this act shall be maintained unless valid notice has been given and the action is commenced within six (6) months after notification of denial of the claim by the clerk of the political subdivision. * * *"
The provisions for commencing an action were amended in the 1984 session and are now found in 51 O.S.Supp. 1984 § 157(B) [Okl.Sess.L. 1984, Ch. 228, § 5]. Section 157(B) provides:
"No action for any cause arising under this act shall be maintained unless valid notice has been given and the action is commenced within one hundred eighty (180) days after denial of the claim as set forth in this section."

3. See *infra* footnote 15 for the text of Art. 5, § 59, Okl.Const.

4. See *infra* footnote 9 for the text of Art. 2 § 7, Okl.Const.

5. *Reherman v. Oklahoma Water Resources Board*, Okl., 679 P.2d 1296, 1300 [1984]; *Kimery v. Public Service Co. of Oklahoma*, Okl., 622 P.2d 1066, 1069 [1981] and *Earnest, Inc. v. LeGrand*, Okl., 621 P.2d 1148, 1152 [1981]. In *Earnest* we pronounced that a legislative enactment should be held valid unless its constitutional infirmity is shown beyond a reasonable doubt.

6. Okl., 611 P.2d 239 [1980]. See also *Johns v. Wynnewood School Bd. of Educ.*, Okl., 656 P.2d 248, 250 [1982] and *Ross v. City of Shawnee*, Okl., 683 P.2d 535, 537 [1984].

challenge.[7] We acknowledged in *Reirdon* that § 156 resulted in the establishment of *two different classes* of actionable tort claims—those against public entities and those against private actors. Applying to the statute the rational-basis test,[8] we declared that the dichotomous division of tortfeasors into private and public categories rests on a legitimate state interest and does not offend constitutional restrictions on the legislative use of classification criteria. We now reiterate our commitment to the teaching of *Reirdon.*

7. The function of the Equal Protection Clause is to measure the validity of classifications created by state laws. *Parham v. Hughes,* 441 U.S. 347, 351, 99 S.Ct. 1742, 1745, 60 L.Ed.2d 269 [1979].

8. When analyzing a case on equal-protection grounds, a court will apply one of three standards of review, depending upon (a) the basis of the classification, (b) the nature of the interests impaired by the classification and (c) the character of state interests offered in support of the classification. The three different levels of scrutiny employed in an equal-protection analysis are *rational basis, heightened scrutiny* and *strict scrutiny.* The rational-basis test governs here. It was applied in *Reirdon, supra* note 6 at 240, because there the court dealt with neither a suspect classification nor with an infringement upon a fundamental right. *City of Cleburne v. Cleburne Living Center,* 473 U.S. ——, 105 S.Ct. 3249, 87 L.Ed.2d 313 [1985].
Courts will uphold a statutory classification if a rational relationship exists between that classification and the state interest. *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 [1970] and *Cleburne, supra.* Whenever a challenged classification is directed at a suspect class or the classification burdens the exercise of a fundamental right, the strict-scrutiny standard will be applied. *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 [1976]. A suspect class requiring application of the strict-scrutiny standard of equal-protection analysis is one saddled with such disabilities, or subject to such a history of purposeful, unequal treatment or regulated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process. *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 313, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 [1976]. Legislative classifications based on gender or illegitimacy call for the heightened standard of review. Under this test a law must be substantially related to an important governmental interest. *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 [1976].

9. *Cate v. Archon Oil Co.,* Okl., 695 P.2d 1352, 1353, 1356 [1985] and *State v. Mauldin,* Okl., 602 P.2d 644, 646 [1979].

■ Due process is typically invoked to assure that individual and property rights are not taken by governmental authority without notice and opportunity for hearing.[9] In the context of a statutory time bar, a *reasonable* interval of time does not offend the concept of due process.[10] A time limit for the commencement of an action will stand invalidated *only* if it denies the plaintiff a reasonable opportunity to initiate an action or if it unconstitutional-

Our due process clause in Art. 2 § 7, Okl. Const., has a definitional sweep that is coextensive with its federal counterpart. *McKeever Drilling Co. v. Egbert,* 170 Okl. 259, 40 P.2d 32, 36 [1935] and *Matter of Rich,* Okl., 604 P.2d 1248, 1250–1251 [1979].
The terms of Art. 2 § 7, Okl.Const., are:
"No person shall be deprived of life, liberty, or property, without due process of law."
A cause of action is a species of property protected by the Due Process Clause. In *Logan v. Zimmerman Bush Co.,* 455 U.S. 422, 428–429, 102 S.Ct. 1148, 1153–1154, 71 L.Ed.2d 265 [1982], the Court held that an employee's right to use the Fair Employment Practices Act's adjudicatory procedures is property protected by the Due Process Clause. Any restriction on court access that abridges this property interest and imperils basic individual interests which can be vindicated only through state-monopolized means will be struck down, absent a "countervailing state interest of overriding significance." *Logan, supra,* 455 U.S. at 429–430, 102 S.Ct. at 1154–1155.

10. Due process requires that all governmental actions must have a fair and reasonable impact on the life, liberty or property of the person affected. *City of Edmond v. Wakefield,* Okl., 537 P.2d 1211, 1213 [1975]; *Lindsey v. State ex rel. Dept. of Corrections,* Okl., 593 P.2d 1088, 1092 [1979] and *Meadows v. Meadows,* Okl., 619 P.2d 598, 601 [1980].

The gauge of reasonableness is the test used for measuring the constitutional validity of a statutory time bar. *Baccus v. Banks,* 199 Okl. 647, 192 P.2d 683, 692 [1948]; *Tucker v. McCrory,* Okl., 266 P.2d 433, 434 [1954]; *Woods v. Phillips Petroleum Co.,* 207 Okl. 490, 251 P.2d 505, 509 [1952] and *McCarroll v. Doctors General Hosp.,* Okl., 664 P.2d 382, 387 [1983]; *see also, Landgraff v. Wagner,* 546 P.2d 26, 26 Ariz.App. 49 [1976], *appeal dismissed,* 429 U.S. 806, 97 S.Ct. 40, 50 L.Ed.2d 67 [1977].

ly infringes on a person's protected interests.[11]

Section 156 allowed a plaintiff up to 13 months to file a petition following the occurrence of an injury.[12] Because this statutory limit does not appear unreasonable in length, we must decline Black's invitation to declare it infirm as impermissibly abbreviated.[13]

■ In an attack based on Oklahoma's prohibition against the enactment of special legislation, the general gauge for measuring a statute's constitutionality is the reasonableness of the classification and the uniformity of its operation.[14] The law need not be universal in its application and operate upon all persons in a like manner in order to be general under Art. 5, § 59, Okl. Const.[15] A classification is not infirm if the special class has some reasonable distinction from other subjects of a like general character, which distinction bears some reasonable relation to the legitimate objectives and purposes of the legislation.[16]

■ There are real and vital distinctions that provide a rational basis for recogniz-ing municipal tortfeasors as a special class.[17] By their very nature municipal corporations need not be placed in the same category as private corporations or natural persons. They are created for the benefit of the community as a whole, not for the financial gain of the individual citizens. No profit from their proprietary or corporate operations may find its way into the private pockets of the individual citizens, but all of its revenue is captured for the benefit of the public treasury. A legal controversy between an individual and a private corporation affects only the litigants but a controversy between an individual or private corporation and a municipality affects all taxpayers within the corporate limits of the municipality. Any judgment against a city is paid from its public treasury and, if the treasury is deficient, taxes must be levied to replenish it. *No* private party bears tort liability for injuries caused by defective or unsafe conditions of public highways or has exposure to liability for the injury-dealing conditions of public ways and public buildings.

The terms of 51 O.S. 1981 § 166 clearly provide that the Act governs *all torts* re-

11. *Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 315, 65 S.Ct. 1137, 1142–1143, 89 L.Ed. 1628 [1945]. For a discussion of the "reasonableness" in statutory limitations applicable to paternity actions, see *Mills v. Habluetzel,* 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 [1982] (one-year limitation); *Pickett v. Brown,* 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 [1983] (two-year limitation) and *Callison v. Callison,* Okl., 687 P.2d 106 [1984] (three-year limitation). In each of these cases the limitation was challenged on *equal-protection grounds.* In *Mills* and *Pickett, supra,* a two-prong analysis was applied and the Court held that [1] neither a one-year nor a two-year time limit provides an out-of-wedlock child with a reasonable opportunity to initiate a paternity action and to establish a support obligation and [2] the limitation periods in controversy were not substantially related to the state's interest in preventing the litigation of stale and fraudulent claims. Using a similar analysis in *Callison, supra,* Oklahoma's three-year limitation was struck as constitutionally infirm.

12. 51 O.S. 1981 § 156 (B) and (C) provided that a plaintiff had 120 days to give notice of the claim, the political subdivision had 90 days to act after receiving notice of the claim and thereafter the plaintiff had 6 months to bring suit after denial of the claim.

13. Compare the statutory period here under consideration with that provided by 12 O.S. 1981 § 95. The latter requires that an action for libel, slander, assault, battery, malicious prosecution or false imprisonment be brought within 12 months.

14. *Haas v. Holloman,* Okl., 327 P.2d 655, 658–659 [1958].

15. The terms of Art. 5, § 59, Okl.Const., are: "Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted."

16. *Haas v. Holloman, supra* note 14 at 658–659; *Tulsa Exposition and Fair Corp. v. Board of Co. Com'rs,* Okl., 468 P.2d 501, 505 [1970] and *State v. Rockwell,* Okl., 443 P.2d 104 [1968].

17. The distinctions between a "governmental" and a "nonpublic" tortfeasor have been noted by jurisprudence in other jurisdictions. See *Budahl v. Gordon & David Assoc.,* 287 N.W.2d 489, 492 [S.D.1980]; *Martineau v. City of Daytona Beach,* 47 So.2d 538, 539 [Fla.1950] and *Campbell v. City of Lincoln,* 195 Neb. 703, 240 N.W.2d 339, 342–343 [1976]; see also *Wilson & Co. v. City of Jacksonville,* 170 F.2d 876, 879 [5th Cir. 1948].

gardless of whether they occurred during the exercise of an affected entity's governmental or proprietary function.[18] The intent of the legislature clearly was to eliminate pre-existing artificial barriers between two different municipal functions and to impose a *single* procedural regime with a *single* gauge of liability for *all* claims pressed against the government, no matter in what capacity the public agency may have acted at the time of the harmful event. To prescribe separate forms of court process and distinct measures of responsibility for different functions of the government would more likely perpetuate the confusion of yore than foster symmetry in the choice of constitutionally permissible criteria for legislative classification.[19]

No offense was dealt the Equal Protection or the Due Process Clauses by requiring that suits against the government for tortious harm committed by its agents acting in either proprietary or governmental capacity stand subjected to the very same norms of liability. Moreover, in creating a separate class of public tortfeasors, the Act did not violate the state's constitutional prohibition against special legislation because the classification used is reasonable for the attainment of a legitimate objective and operates uniformly upon all members of the class.

Judgment of the district court is AFFIRMED.

All the Justices concur.

---

**18.** The terms of 51 O.S. 1981 § 166 provide: "The distinction existing between governmental functions and proprietary functions of political subdivisions shall not be affected by the provisions of this act; however the provisions of this act shall apply to both governmental and proprietary functions."

See also *Neal v. City of Blackwell,* Okl., 670 P.2d 587, 588 [1983].

**19.** Although Black seems to argue that the Act serves to "confuse and confound" the public, she was not misled by its terms and was able to comply with the notice provisions of 51 O.S. 1981 § 156(B).