2010 OK 72
STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
MERL ALAN WHITEBOOK, Respondent.
No. SCBD-5579.
Supreme Court of Oklahoma.
October 12, 2010.
Ted D. Rossier, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.
TAYLOR, V.C.J.
¶ 1 The Oklahoma Bar Association (OBA), filed a complaint against attorney Merl Alan Whitebook (Whitebook). The OBA alleges in four counts that Whitebook violated the Oklahoma Rules of Professional Conduct, 5 O.S.2001, ch. 1, app. 3-A (ORPC), and the Oklahoma Rules Governing Disciplinary Proceedings, 5 O.S.2001, ch. 1, app. 1-A (RGDP). Whitebook did not file an answer to the complaint as required by rule 6.4 of the RGDP.
¶ 2 On October 20, 2009, the Professional Responsibility Tribunal (PRT), conducted a hearing. Whitebook failed to appear. The PRT found that Whitebook had received notice of the charges against him, and that the charges were deemed admitted based on Whitebook's failure to respond to the complaint. The PRT recommended that Whitebook be suspended from the practice of law for two years and one day and ordered to pay the costs of the disciplinary proceeding.

I. STANDARD OF REVIEW
¶ 3 In bar disciplinary proceedings, this Court exercises its constitutional, nondelegable power to regulate the practice of law and legal practitioners. State ex rel. Okla. Bar Ass'n v. Bolton, 1994 OK 53, ¶ 15, 880 P.2d 339, 344. This Court decides whether misconduct has occurred and, if so, the appropriate discipline to be imposed. State ex rel. Okla. Bar Ass'n v. Todd, 1992 OK 81, ¶ 2, 833 P.2d 260, 261. The burden of proof is by clear-and-convincing evidence. State ex rel. Okla. Bar Ass'n v. Rogers, 2006 OK 54, ¶ 9, 142 P.3d 428, 432. In our de novo review, this Court is not bound by the PRT's findings of fact, its view of the evidence, its view of the credibility of witnesses, or its recommendations of discipline. Todd, 1992 OK 81 at ¶ 2, 833 P.2d at 261.

II. COUNT I
¶ 4 The OBA alleges the following facts in count one of the complaint. About June 29, 2007, a client retained Whitebook to handle the probate of an estate and paid Whitebook $1,000.00 as a retainer fee. Whitebook initially performed some work on the case but ceased further work some time in October of 2007.[1] The client attempted to contact Whitebook multiple times. On one or two occasions when the client communicated with Whitebook he vaguely promised to complete the probate.
¶ 5 The client was forced to retain substitute counsel, and the probate was completed about November 5, 2008, at considerable additional expense and hardship on the family. Whitebook has not refunded the unearned portion of the retainer.

III. COUNT II
¶ 6 The OBA alleges the following in count two of the complaint. About July 9, 2008, a client hired Whitebook to handle a probate of an estate and paid Whitebook an $800.00 retainer fee. As of November 9, 2009, Whitebook had failed to take any action on the probate. The client made multiple attempts at communicating with Whitebook which were unsuccessful. Some time after April 8, 2009, the client communicated with Whitebook. Whitebook indicated he was not feeling well but would get to the probate as soon as possible. Whitebook still failed to perform any services for the client. The client requested that Whitebook refund the retainer fee, but Whitebook has failed to do so.

IV. COUNTS III AND IV
¶ 7 In count three, the OBA alleges the following facts. On July 17, 2008, the OBA received the grievance from the client in count one. On July 21, 2008, the OBA sent Whitebook a letter advising him of the grievance and requesting that he respond to the allegations within twenty days. Having failed to receive a response from Whitebook, the OBA sent Whitebook a letter by certified mail on August 18, 2008, asking Whitebook to respond within five days. Whitebook signed for the certified letter on August 19, 2008, but did not respond. The Professional Responsibility Commission issued a subpoena duces tecum for appearance at an investigative deposition. Whitebook appeared at the hearing held on October 2, 2008, but failed to give an adequate reason for his failure to respond to the OBA's investigation.[2]
¶ 8 In count four, the OBA alleged the following facts. On January 12, 2009, the client in count two filed a grievance with the Tulsa County Bar Association (TCBA). Because Whitebook did not respond to the TCBA's request for information, the grievance was forwarded to the OBA which opened a formal investigation in April of 2009.
¶ 9 On May 1, 2009, the OBA mailed Whitebook a letter asking him to respond to the grievance within twenty days. When Whitebook failed to respond, the OBA sent Whitebook a certified letter on May 22, 2009. Whitebook did not sign for the certified letter and, on July 6, 2009, was personally served with a subpoena to appear for an investigative deposition on July 9, 2009. Whitebook did not appear at the deposition. On July 9, 2009, Whitebook called the OBA and left a message that he was in Denver, Colorado, and had received the subpoena on July 8. The OBA's investigator tried unsuccessfully to return the call. Contradicting Whitebook's statement that he was served on July 8, the process server's affidavit shows that Whitebook was personally served at 9:25 p.m. on July 6, 2009, in Bartlesville, Oklahoma. On July 20, 2009, the OBA's investigator sent Whitebook an email informing him that he was "still obligated under our subpoena" and that he needed to contact her as soon as possible.

V. ADDITIONAL FACTS
¶ 10 The OBA filed the complaint in this proceeding and a copy was mailed to Whitebook by certified mail, return receipt requested and restricted delivery, to his official OBA roster address on September 4, 2009. The return receipt shows that Whitebook signed for the complaint at 4:36 p.m. on September 10, 2009. Whitebook did not file a response to the complaint. The certificate of mailing shows, on September 10, 2009, the OBA sent Whitebook a copy of the notice that the hearing before the PRT was set for 9:30 a.m. on October 20, 2009, at the OBA conference room in Oklahoma City, Oklahoma. Whitebook did not appear at the hearing held on the set date. On November 9, 2009, the OBA filed a motion to deem the allegations in the complaint to be admitted. Even though a copy was mailed to Whitebook, he did not respond to the motion.
¶ 11 On October 20, 2009, the PRT held a hearing and took evidence. Whitebook did not appear. Even though the motion to deem the allegations in the complaint to be admitted had yet to be filed in the Supreme Court clerk's office, the PRT had the motion before it at the hearing and considered the motion. At the hearing, the PRT accepted documents into evidence and heard the testimony of the OBA's investigator. The investigator's testimony concerned only counts three and four.
¶ 12 The PRT filed its report on November 13, 2009, in which it accepted the motion to deem the allegations admitted. It also found that Whitebook had properly been served with notice but had wholly failed to respond. Lastly, the PRT recommended that Whitebook be suspended from the practice of for two years and one day and ordered to pay the costs of the proceeding.
¶ 13 On November 13, 2009, the OBA filed its application to assess costs against Whitebook in the amount of $1,226.51. On November 20, 2009, this Court filed a briefing schedule with the OBA's brief being due on December 4, 2009, Whitebook's brief due within fifteen days thereafter, and the OBA's reply brief due ten days after Whitebook's was filed.
¶ 14 The OBA filed its brief on December 4, 2009, Whitebook did not file a brief, and the OBA waived filing a reply brief. In its brief, the OBA asserts that there is sufficient evidence for this Court's de novo review, that Whitebook had sufficient notice to satisfy due process requirements, that the PRT properly sustained the OBA's motion to deem the allegations admitted, and that the OBA proved Whitebook's misconduct by clear and convincing evidence and supported its recommendation of suspension of two years and a day with authority and argument.

VI. ANALYSIS
¶ 15 When a lawyer fails to file an answer to the complaint, as Whitebook has failed to do, the factual charges in the complaint are deemed admitted. RGDP rule 6.4 ("In the event the respondent fails to answer, the charges shall be deemed admitted, except that evidence shall be submitted for the purpose of determining the discipline to be imposed."). Rule 6.4 allows the OBA to meet its burden of proof without unnecessarily increasing the cost of the proceedings.
¶ 16 As to counts one and two, the OBA alleges Whitebook has violated rules 1.1,[3] 1.3,[4] and 1.4,[5] 1.5,[6] 1.15,[7] 1.16,[8] and 8.4(a), (c), and (d) of the ORPC and rule 1.3 of the RGDP.[9] As to counts three and four, the OBA alleges Whitebook has violated rules 8.1(b)[10] and 8.4(a) and (c) of the ORPC and rules 1.3 and 5.2[11] of the RGDP.
¶ 17 The facts alleged in counts one and two of the complaint which are deemed admitted under rule 6.4 support the following findings: (1) Whitebook failed to provide competent representation to both of these clients as required by rule 1.1 of the ORPC; (2) Whitebook failed to act with diligence in representing these clients as required by rule 1.3 of the ORPC; (3) Whitebook failed to keep these clients reasonably inform and failed to promptly comply with reasonable requests for information as required by rule 1.4(a)(3) and (4) of the ORPC; and (4) Whitebook failed to charge the client referenced in count two a reasonable fee as required by rule 1.5 of the ORPC, but the allegations in count one do not show that Whitebook failed to provide services in the amount of the retainer fee.[12]
¶ 18 We address next the allegations that Whitebook violated rules 1.15 and 1.16 of the ORPC. Rule 1.15 addresses the safekeeping of a client's property entrusted to a lawyer by segregating the property. Under rule 1.15, a lawyer may be required to maintain a trust account and deposit a client's money in the account. The OBA does not allege in the complaint that Whitebook failed to deposit the retainer fees in a trust account or otherwise failed to isolate the fees from his other funds. The alleged facts, if deemed admitted, are insufficient to show that Whitebook violated rule 1.15 of the ORPC.
¶ 19 Rule 1.16 of the ORPC addresses a lawyer's obligations and methods for declining and terminating representation. The complaint does not allege that Whitebook declined representation, that his representation was terminated, or that he failed to surrender papers and property to which his clients' were entitled. The OBA has failed to the show Whitebook violated rule 1.16 of the ORPC.
¶ 20 Rule 8.1(b) of the ORPC requires a lawyer, when requested by the OBA, to respond to a demand for information regarding a grievance. Rule 5.2 of the RGDP requires a lawyer to answer within twenty days after the service of a grievance unless additional time is granted by the OBA. Here Whitebook filed his answer to the first grievance only after being subpoenaed by the OBA and did not file an answer to the second grievance in violation of rule 8.1(b) of the ORPC and rule 5.2 of the RGDP.

VII. FINDINGS AND CONCLUSIONS
¶ 21 A lawyer accused of misconduct must be afforded due process: the lawyer must be given notice of the charges and afforded an opportunity to be heard. State ex rel. Okla. Bar Ass'n v. Seratt, 2003 OK 22, ¶ 7, 66 P.3d 390, 392. Whitebook received notice by mail, certified mail, and personal service of every stage of the proceeding and of the charges against him, and Whitebook was afforded an opportunity to respond to the grievances and to the complaint, to attend the PRT hearing, and to file a brief with this Court. He chose to attend only one deposition and did not otherwise avail himself of opportunities to be heard. We find that Whitebook received sufficient notice and was afforded an opportunity to be heard so that he received his right to due process.
¶ 22 The Court finds that the record is sufficient for our de novo review of the allegations against Whitebook. State ex rel. Okla. Bar Ass'n v. Shomber, 2009 OK 95, ¶ 28, 227 P.3d 157, 162-163. Based on this record, we find that Whitebook violated rules 1.1, 1.3, 1.4, 1.5, and 8.1(b) of the ORPC and Rule 5.2 of the RGDP. The record is insufficient to support a finding of a violation of rules 1.15 and 1.16 of the ORPC, and rule 8.4 of the ORPC and rule 1.3 of the RGDP are inapplicable.
¶ 23 The goal of discipline in bar proceedings is not to punish but to protect the public and the integrity of the judicial system. State ex rel. Okla. Bar Ass'n v. Beasley, 2006 OK 49, 142 P.3d 410. "The integrity of the judicial system demands that lawyers, who are officers of the court, respect its authority." State ex rel. Okla. Bar Ass'n v. Giger, 2003 OK 61, ¶ 34, 72 P.3d 27, 38. This Court's authority in bar disciplinary proceedings extends to the rules promulgated by this Court which govern the proceedings. A person who holds a bar license is subject to these rules and is required to promptly and adequate respond to allegations of misconduct when lawfully requested to do so.
¶ 24 In Beasley, 2006 OK 49, 142 P.3d 410, the lawyer, who admittedly had a substance abuse problem, was charged in six grievances generally of failing to perform legal services for which he was paid, failing to communicate with clients, and failing to refund unearned fees. He did not respond to the grievance, did not respond to the complaint, and did not participate in the proceedings except to appear at the PRT hearing. At the hearing rather than oppose the OBA's motion to deem the allegations admitted, the lawyer stipulated to the motion. This Court suspended the lawyer from the practice of law for two years and a day.
¶ 25 Similarly, in State ex rel. Okla. Bar Ass'n v. Phillips, 1990 OK 4, 786 P.2d 1242, the lawyer was suspended from the practice of law for three years generally for neglecting a client matter, failing to act with reasonable diligence, failing to communicate with a client, failing to respond to the OBA's request for information concerning the grievances, and failing to appear at dispositions and the hearing. The lawyer did not respond to the complaint, file a brief, or otherwise defend his right to practice law. Both Beasley and Phillips, guide us in determining the proper discipline in this proceeding.
¶ 26 We find that Whitebook's neglect of his clients' matters and his failure to communicate with his clients warrant discipline. Whitebook's almost total disregard for this Court's authority as exhibited by his failure to respond to a grievance, failure to appear for a deposition for which he was subpoenaed, failure to answer the complaint, and failure to file a brief warrant additional discipline. When a lawyer places so little value on his license to practice law and shows no desire to protect his license, he should be forced to appear before this Court pursuant to rule 11 of the RGDP to show why he should again be allowed to practice law. Thus, we find that the appropriate discipline is suspension from the practice of law for two years and a day. Merl Alan Whitebook is ordered to comply with rule 9 of the RGDP. Pursuant to rule 6.16 of the RGDP, costs are assessed in the amount of $1,226.51 to be paid within ninety days that this opinion becomes final, and reinstatement is conditioned on payment of these costs.
RESPONDENT SUSPENDED FROM THE PRACTICE OF LAW FOR TWO YEARS AND ONE DAY; ORDERED TO PAY COSTS.
Edmondson, C.J., Taylor, V.C.J., and Hargrave, Watt, Winchester, and Colbert, JJ., concur.
Kauger, J., (by separate writing) concurs in part, dissents in part.
Reif, J., disqualified.
KAUGER, J, concurring in part, dissenting in part:
¶ 1 The complaint filed by the Oklahoma Bar Association (Bar Association) on September 4, 2009, states that the second grievance was originally filed with the Tulsa County Bar Association (TCBA) on January 12, 2009. Apparently, when the lawyer did not respond to the TCBA inquiries, the TCBA forwarded the matter to the Bar Association for a formal investigation on April 8, 2009.
¶ 2 The record reflects that the TCBA sent a letter to the lawyer on January 19, 2009, which provides in pertinent part:
Dear Mr. Whitebook:
Enclosed is a copy of a grievance alleging professional misconduct filed with the Tulsa County Bar Association Professional Responsibility Committee. Please submit a written response within twenty (20) days of the date hereof. Your failure to respond timely may result in the referral of this grievance to the General Counsel of the Oklahoma Bar Association for further action.
As you may know, the Supreme Court delegated to the Oklahoma Bar Association General Counsel the duty to investigate grievance filed against Oklahoma lawyers. The Tulsa Professional Responsibility Committee has been asked by the OBA General Counsel to assist with the investigation of grievances filed with the TCBA against lawyers in Northeastern Oklahoma. Our role is investigative only. Our more than 60 volunteer members investigate and report their recommendations to the Committee as a whole. The Committee can take one of two actions: dismiss the grievance, in which case no further action will be taken; or refer the matter to the OBA General Counsel for further action, investigations, and possible disciplinary action by the OK Supreme Court. (Emphasis supplied.)
¶ 3 Additionally, the TCBA website (www.tulsabar.com) contains a link which provides: "Problems with a Lawyer?" The website also states:
The Tulsa County Bar Association cannot give you any advice regarding your attorney's conduct. However, the TCBA Professional Responsibility Committee will investigate complaints involving ethical concerns. All complaints must be submitted in writing and signed. . . . If the attorney is in Tulsa County you may download the Grievance form using the link to the right under Related Links.
If the attorney is NOT located in Tulsa County you must call the State Bar of Oklahoma at the numbers listed below or visit their website to obtain the correct form. (Emphasis in original).
¶ 4 The original jurisdiction of the Oklahoma Supreme Court extends to a general superintending control over all inferior courts and all agencies, commissions and boards created by law.[1] It is the Supreme Court's nondelegable, constitutional responsibility to regulate discipline of the practitioners of law and the duty is vested solely in this department of government.[2] The Supreme Court, to aid in its duty of administering justice in Oklahoma created the Oklahoma Bar Association,[3] as an official arm of the Court.[4] Attorney's licensed in Oklahoma are a part of the judicial system and are officers in its courts.[5]
¶ 5 The Court has original and exclusive jurisdiction in all matters involving administration of persons to practice law in this State and to discipline for cause, any and all persons licensed to practice law in Oklahoma.[6] As part of this jurisdiction the Court, through the Board of Governors and the Professional Responsibility Commission, employs the General Counsel of the Bar Association[7] whose duties of office include investigation of all matters involving possible misconduct.[8] The Court approves over a million dollar budget funded from the private dues paid by the Oklahoma Bar Association members to enable the General Counsel to carry out those duties. Extensive procedures for investigation of grievances against lawyers as well as for investigating misconduct by the General Counsel, when alleged to occur, have been established to ensure that justice is administered equally and fairly to all lawyers in Oklahoma in a centralized location are found in the Rules Governing Disciplinary Proceedings.[9]
¶ 6 Rule 3.2 of the Rules Governing Disciplinary Proceedings, 5 O.S. 2010 Ch. 1, App. 1-A, Rule 3.2 provides in pertinent part:
The General Counsel of the Oklahoma Bar Association shall have the following powers and duties in the area of discipline under these Rules: . . .
(i) To use the services of other members of the Oklahoma Bar Association (including, but not limited to, any state or county Bar grievance committee) in carrying out the duties imposed upon the General Counsel concerning the general supervision of all disciplinary matters affecting lawyers.
We explained in State ex. rel. Oklahoma Bar Association v. Downes, 2005 OK 33, ¶26, 121 P.3d 1058, that, Rule 3.2(i) does not allow a bar member or county Bar Association to determine that a formal complaint should not be initiated or to impose discipline, even by private reprimand.[10] We also said that after a bar member or state or county bar committee investigates a grievance, it should submit its report as to every grievance or complaint, together with supporting documentation, to the General Counsel for presentation to the Commission.[11] According to the TCBA letter, it does not interpret either Downes or Rule 3.2 the way we do. I would be most interested in determining how many cases have been dismissed by the Tulsa County Bar Disciplinary Committee since Downes was promulgated in 2005.
¶ 7 I have grave concerns regarding this rule and it potential misuse. I thought those concerns might have been diminished when we decided Downes, but today I would re-visit the issue and strike Rule 3.2(i) altogether as unconstitutional since its promulgation. Allowing a County Bar Association to screen grievances and to decide whether such grievances may be dismissed or forwarded to the General Counsel should not be authorized. Such an interpretation fails to provide even-handed due and equal process to Oklahoma lawyers.[12] For 76 counties in Oklahoma we have a neutral investigator; for Tulsa County, investigations are being conducted by a lawyer's peers and colleagues. Rule 3.2 provides special treatment for Tulsa County lawyers. This treatment may inure to their benefit or to their detriment  either way it is disparate.
¶ 8 The respondent lawyer in this cause does not complain of the grievance being forwarded by the TCBA.[13] Nevertheless, one of the main factors for determining the respondent's discipline is the fact that he was non-responsive to the OBA investigations. Most lawyers in Oklahoma would probably be surprised to discover that their County Bar Association may be investigating and questioning them. Had he been contacted initially by the General Counsel's office of the Bar Association, his responsiveness may have been very different.
¶ 9 The discipline recommended by the Professional Responsibility Commission, the Bar Association and this Court may or may not be comparable to similar situated previous disciplined lawyers. For instance, in the deposition of the respondent lawyer taken on October 2, 2008, the assistant general counsel of the Oklahoma Bar Association appeared to be very sympathetic to his depression, Crohn's disease, and possible onset of prostate cancer. He was asked to elaborate on his health issues, and the Bar Association's lawyer even offered to provide assistance and/or help regarding these health issues.[14] Perhaps this cause should have been brought under Rule 10.[15]
¶ 10 I do concur that discipline should be imposed. However, I cannot sanction the continuation of allowing a County Bar Association to screen and dismiss grievances on behalf of the General Counsel without referring them to the General Counsel. The TCBA letter suggests that it has continued this practice in contradiction to State ex. rel. Oklahoma Bar Association v. Downes, 2005 OK 33, ¶26, 121 P.3d 1058. Again, I would like to know how many causes have been dismissed, if any, since 2005. I would strike Rule 3.2 (i) of the Rules Governing Disciplinary Proceedings, 5 O.S. 2010 Ch. 1, App. 1-A, and prohibit the General Counsel from delegating the duty to investigate complaints to anyone outside of the office of the General Counsel.
NOTES
[1] In a deposition, Whitebook testified that he worked on the case at least until January of 2008. The OBA's questions in the deposition indicate that the client fired Whitebook in March of 2008 and retained other counsel.
[2] In the deposition, Whitebook admitted that he received the letters from the OBA but he "panicked," and "[ j]ust froze up" when he received them.
[3] Rule 1.1 of the ORPC provides:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.
[4] Rule 1.3 of the ORPC provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."
[5] Rule 1.4 of the ORPC provides:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.
[6] Rule 1.5(a) of the ORPC provides in part: "A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses. . . ."
[7] Rule 1.15 of the ORPC governs the requirements to segregate a client's property and to maintain a trust account.
[8] Rule 1.16(c) and (d) provide:

(c) A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.
(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expenses that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.
[9] In State ex rel. Okla. Bar Ass'n v. Wilcox, 2009 OK 81, n. 9, 227 P.3d 642, 651 n.9, regarding rule 8.4 of the ORPC, we stated: "This rule does not by itself mandate a lawyer's conduct but defines professional misconduct for which discipline is appropriate." Also in the same note 9, regarding rule 1.3 of the RGDP, we stated: "Rule 1.3 does not mandate lawyer conduct. Rule 1.3 subjects a lawyer to discipline for a violation of rules mandating lawyer conduct." Rules 8.4 and 1.3 are the authorities which allow a lawyer to be disciplined and are not provisions mandating a lawyer's professional conduct.
[10] Rule 8.1(b) of the ORPC provides in part: "[A] lawyer . . . in connection with a disciplinary matter, shall not . . . knowingly fail to respond to a lawful demand for information from an adissions or disciplinary authority. . . ."
[11] Rule 5.2 of the RGDP provides in part: "The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline."
[12] The complaint acknowledges that Whitebook performed some services for the client. In a deposition, Whitebook testified and produced documents (the OBA did not make the documents part of the record) that he had done considerable work on the probate and was continuing working on the probate at the time of the deposition.
[1] The Oklahoma Constitution art. 7, §4 provides in pertinent part:

. . . The appellate jurisdiction of the Supreme Court shall be co-extensive with the State and shall extend to all cases at law and in equity; except that the Court of Criminal Appeals shall have exclusive appellate jurisdiction in criminal cases until otherwise provided by statute and in the event there is any conflict as to jurisdiction, the Supreme Court shall determine which court has jurisdiction and such determination shall be final. The original jurisdiction of the Supreme Court shall extend to a general superintendent control over all inferior courts and all Agencies, Commissions and Boards created by law. . . .
[2] Title 5 O.S. 2001 §13; In re Reinstatement of Pacenza, 2009 OK 9, ¶7, 204 P.3d 58, State ex rel. Oklahoma Bar Ass'n v. Farrant, 1994 OK 13, ¶13, 867 P.2d 1279.
[3] The Rules Creating and Controlling the Oklahoma Bar Association, 5 O.S. 2010 Ch. 1, App. 1, Preamble provides:

In the public interest, for the advancement of the administration of justice according to law, and to aid the courts in carrying on the administration of justice; to foster and maintain on the part of those engaged in the practice of law high ideals of integrity, learning, competence and public service, and high standards of conduct; to provide a forum for the discussion of subjects pertaining to the practice of law, the science of jurisprudence, and law reform; to carry on a continuing program of legal research in technical fields of substantive law, practice and procedure, and to make reports and recommendations thereto; to prevent the unauthorized practice of law; to encourage the formation and activities of local bar associations; to encourage practices that will advance and improve the honor and dignity of the legal profession; and to the end that the responsibility of the legal profession and the individual members thereof, may be more effectively and efficiently discharged in the public interest, and acting within the police powers vested in it by the Constitution of this State (Okla. Const. (1907), Art. IV, Section 1, Art. VII (1967) Section 1, 4; In re Integration of State Bar of Oklahoma, 185 Okla. 505, 95 P.2d 113 (1939); In re Bledsoe, 186 Okla. 264, 97 P.2d 556 (1939); Ford v. Board of Tax Roll Corrections of Oklahoma County, 431 P.2d 423 (Okla.1967)). The Supreme Court of Oklahoma does hereby create and continue an association of the members of the Bar of the State of Oklahoma to be known as the Oklahoma Bar Association, and promulgates the following rules for the government of the Association and the individual members thereof.
[4] Tweedy v. Oklahoma Bar Ass'n, 1981 OK 12, ¶4, 624 P.2d 1049. The Rules Creating and Controlling the Oklahoma Bar Association, 5 O.S. 2010 Ch. 1, App. 1, Art. 1, § 1 provides:

The Oklahoma Bar Association is an official arm of this Court, when acting for and on behalf of this Court in the performance of its governmental powers and functions.
[5] The Rules Creating and Controlling the Oklahoma Bar Association, 5 O.S. 2010 Ch. 1, App. 1, Art. 1, §2 provides:

Attorneys admitted to practice law in Oklahoma are a part of the judicial system of Oklahoma and officers of its courts.
[6] Smith v. Brock, 1975 OK 27, ¶15, 532 P.2d 843; The Rules Governing Disciplinary Proceedings, 5 O.S. 2010 Ch. 1, App. 1-A, Rule 1.1, Declaration of Jurisdiction provides:

This Court declares that it possesses original and exclusive jurisdiction in all matters involving admission of persons to practice law in this State, and to discipline for cause, any and all persons licensed to practice law in Oklahoma, hereinafter referred to as lawyers, and any other persons, corporations, partnerships, or any other entities (hereinafter collectively referred to as "persons") engaged in the unauthorized practice of law. This Court further declares that a member of the Bar of this State may not take unto himself any office or position or shroud himself in any official title which will place him beyond the power of this Court to keep its roster of attorneys clean. In the exercise of the foregoing jurisdiction, this Court adopts and promulgates the following rules which shall govern disciplinary and unauthorized practice of law proceedings.
[7] The Rules Governing Disciplinary Proceedings, 5 O.S. 2010 Ch. 1, App. 1-A, Rule 3.1 provides:

The Board of Governors with the concurrence of the Professional Responsibility Commission shall employ and discharge the General Counsel of the Oklahoma Bar Association.
[8] The Rules Governing Disciplinary Proceedings, 5 O.S. 2010 Ch. 1, App. 1-A, Rule 3.2 provides:

The General Counsel of the Oklahoma Bar Association shall have the following powers and duties in the area of discipline under these Rules:
(a) With the approval of the Commission, to employ and supervise staff needed for the performance of the duties of the office;
(b) To investigate all matters involving possible misconduct or alleged incapacity of any lawyer, or the unauthorized practice of law, called to the General Counsel's attention by complaint or otherwise;
(c) To report to the Commission the results of investigations made by or at the direction of the General Counsel, and to make recommendations to the Commission concerning the institution of formal complaints for alleged misconduct or personal incapacity of lawyers;
(d) To prosecute all proceedings under these Rules;
(e) To appear at hearings conducted with respect to petitions for reinstatement of suspended or disbarred lawyers or lawyers suspended for incapacity to practice law, to cross-examine witnesses testifying in support of such petitions, and to marshal and present available evidence, if any, in opposition thereto;
(f) To file with the Supreme Court certificates of conviction of lawyers for crimes;
(g) To maintain permanent records of all active and inactive discipline and disability matters, subject to the expungement requirements of Rule 3.2(h), as follows:
(1) All inactive disciplinary matters where a formal complaint has been filed with the Supreme Court, shall be maintained indefinitely;
(2) All inactive disciplinary matters where a member has resigned pending disciplinary proceedings or pending investigation which might result in disciplinary proceedings, shall be maintained indefinitely;
(3) All inactive disciplinary matters where a private reprimand has been issued by the Professional Responsibility Commission shall be maintained indefinitely;
(4) All inactive disciplinary matters where the General Counsel's Office has investigated a grievance and reported the grievance to the Professional Responsibility Commission or its predecessor for action, shall be maintained for a period of three (3) years from the date the grievance is made inactive;
(5) All inactive disciplinary matters where the General Counsel has disposed of the grievance by informal procedures, shall be maintained for a period of three (3) years from the date the grievance is made inactive.
(h) To expunge after three (3) years all records of the Commission relating to grievances terminated by dismissal, except that the General Counsel shall retain a docket showing the names of each respondent and complainant, the final disposition, and the date all records relating to the matter were expunged, except that the General Counsel may, prior to the expiration of the three (3) years, apply to the Commission for an additional three (3) years which application shall be granted upon a showing of good cause and with notice to respondent; expunge other grievances as directed by the Commission pursuant to Rule 5.3(b).
(i) To use the services of other members of the Oklahoma Bar Association (including, but not limited to, any state or county Bar grievance committee) in carrying out the duties imposed upon the General Counsel concerning the general supervision of all disciplinary matters affecting lawyers.
[9] The Rules Governing Disciplinary Proceedings, 5 O.S. 2010 Ch. 1, App. 1-A, Rule 1.1 et seq.
[10] In State ex. rel. Oklahoma Bar Association v. Downes, 2005 OK 33, ¶26, 121 P.3d 1058, one of the grievances filed against Downes was filed by a client initially with the TCBA and then with the OBA. On March 11, 2004, the TCBA wrote to the OBA, forwarding the complaint which had been filed with them. The letter provides in pertinent part:

. . . I would advise you that on March 7, 2003, Ms. Hanger filed the referenced complaint with the Tulsa County Bar Association Professional Responsibility Committee. While it is not verbatim the identical complaint, it appears to be contained the same principal components of the complaint filed with the Tulsa County Bar Association.
This complaint was. . .reported on at the December 2003 regular meeting of the Professional Responsibility Committee and was dismissed by vote of the committee.
A copy of the letter informing Ms. Hanger of the declination to take further action is attached hereto. The purpose of this letter is simply to advise you of these facts. As always, our file concerning this matter is available to the Oklahoma Bar Association. I find it a bit disconcerting that a complainant would file a second complaint with the OBA after her first substantially similar claim was determined by the committee not to be forwarded to the Oklahoma Bar Association, without bringing that fact to the Bar Association's attention. (Emphasis in original.). . .
The December 10, 2003, letter which was sent to the complainant from the TCBA provides in pertinent part:
. . . Thank you for bringing this matter to our attention. The Professional Responsibility Committee has investigated your complaint against the referenced attorney.
This Committee only addressed grievances alleging attorney misconduct which violates the Oklahoma Rules of Professional Conduct. Although conduct of an attorney may seem otherwise inappropriate, it may not necessarily constitute a violation of the Rules. The conduct in this case was deemed not to violate those Rules and the Committee has dismissed your Complaint.
Accordingly, we decline to take any further action with respect to your Complaint. . . .
[11] Also in State ex. rel. Oklahoma Bar Association v. Downes, see note 10, supra, the Bar Association wrote to the attorney a letter on March 25, 2004, which provides in pertinent part:

. . . Our office is in receipt of your `response' to this grievance, consisting of a cover letter and a copy of your reply to the Tulsa County Bar Association. While our office was aware of a grievance from Ms. Hanger against you being made to the Tulsa County Bar Association, we have no way of knowing if these matters are `in substantially similar form and content,' as no copy of the original grievance against you has ever been furnished to this office. . . .
[12] The Equal Protection Clause of the 14th Amend., § 1, U.S. Const., commands that no State shall deny due process of the law or "deny to any person within its jurisdiction the equal protection of the laws." Oklahoma's due process clause, Art. 2, § 7, Okl. Const., has a definitional sweep that is coextensive with its federal counterpart. Black v. Ball Janitorial Serv., Inc., 1986 OK 75, ¶8, fn.9, 730 P.2d 510, 513.
[13] In another cause, State ex rel. Oklahoma Bar Association v. Beasley, 2006 OK 49, 142 P.3d 410. The TCBA received several complaint forms against Beasley. The record contained letters by the TCBA investigators which concluded several violations of the Rules of Professional Conduct had occurred. Subsequently, the TCBA Professional Responsibility Committee voted to refer the complaints to the OBA. The TCBA sent Beasley a letter similar to the letter sent in State ex. rel. Oklahoma Bar Association v. Downes, see note 10, supra, in which they also informed Beasley that they had the authority to either vote to dismiss the action or to refer the matter to the OBA.
[14] The deposition of October 2, 2008, provides in pertinent part at p.21:

Q: Speaking for myself, if I had trouble getting up out of bed after a prolonged period of time, I would have some issues with depression. That's my question to you. And the reason I'm asking that is not to invade your private life or anything like that, but we have to know these things, (a), to see if there is something present, there are some things that we can offer to assist you, to help you. Number two is that if there are those things, that might be a mitigating factor, so that's the reason I ask the question. . .
Q Okay. Would you be willing, after we're done here, if we refer you to someone that could probably help you define that, (a), and then that could help you? Would you be willing to do that?
A. Yes, sir. . . .
[15] The Rules Governing Disciplinary Proceedings, 5 O.S. 2010 Ch. 1, App. 1-A, Rule 10.2 provides:

Whenever it has been determined that a lawyer is personally incapable of practicing law, his license to practice shall be suspended until reinstated by order of this Court.
The Rules Governing Disciplinary Proceedings, 5 O.S. 2010 Ch. 1, App. 1-A, Rule 10.1 provides:
The term "personally incapable of practicing law" shall include:
(a) Suffering from mental or physical illness of such character as to render the person afflicted incapable of managing himself, his affairs or the affairs of others with the integrity and competence requisite for the proper practice of law;
(b) Active misfeasance or repeated neglect of duty in respect to the affairs of a client, whether in matters pending before a tribunal or in other matters constituting the practice of law; or
(c) Habitual use of alcoholic beverages or liquids of any alcoholic content, hallucinogens, sedatives, drugs, or other mentally or physically disabling substances of any character whatsoever to any extent which impairs or tends to impair ability to conduct efficiently and properly the affairs undertaken for a client in the practice of law.