STATE ex rel. OKLAHOMA BAR ASSOCIATION v. KAUFMAN
2022 OK 69
Case Number: SCBD-7165
Decided: 06/28/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 69, __ P.3d __

 

 

STATE OF OKLAHOMA ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,
v.
RONALD C. KAUFMAN, Respondent.

ORIGINAL PROCEEDING FOR ATTORNEY DISCIPLINE

¶0 The Complainant, State of Oklahoma ex rel. Oklahoma Bar Association, charged the Respondent, Ronald C. Kaufman, with five counts of professional misconduct pursuant to Rule 6 of the Rules Governing Disciplinary Proceedings. The Professional Responsibility Tribunal held a hearing and recommended the Respondent be disbarred. We hold there is clear and convincing evidence that the totality of the Respondent's conduct warrants disbarment. The Respondent is hereby disbarred from the practice of law and ordered to pay costs as provided herein.

RESPONDENT DISBARRED AND ORDERED TO PAY COSTS

Stephen Sullins, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Ronald C. Kaufman, pro se.

COMBS, J.:

¶1 On October 8, 2021, the Complainant, State of Oklahoma ex rel. Oklahoma Bar Association (OBA), began proceedings pursuant to Rule 6 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. 2011, ch. 1, app. 1-A (as amended), claiming the Respondent, Ronald C. Kaufman, has committed acts which constitute professional misconduct in violation of both the RGDP, Rules 1.3

FACTS AND PROCEDURAL HISTORY

¶2 The Respondent was admitted to the OBA on September 25, 1997. However, he was suspended from the practice of law in June 2022 for failure to comply with the Rules for Mandatory Continuing Legal Education (MCLE Rules), 5 O.S. 2011, ch. 1, App. 1-B, and for nonpayment of dues pursuant to Rules Creating and Controlling the Oklahoma Bar Association, 5 O.S. 2011, ch. 1, App. 1, art. VIII. See In the Matter of the Suspension of Members of the Oklahoma Bar Association, 2022 OK 532022 OK 55

¶3 The Complaint alleges multiple counts of professional misconduct based upon grievances made by four clients and one judge. The grievances were received by the OBA on March 19, 2020, March 20, 2020, July 31, 2020, February 19, 2021 and May 10, 2021. The record reflects the Complainant sent the grievances to the Respondent's OBA roster address and many other addresses as well as made attempts to contact him by telephone numbers. Rule 5.2 RGDP requires an answer to a grievance be made within twenty days and failure to do so is grounds for discipline. The Respondent did not timely respond to any of the grievances. Rule 13.1

¶4 On October 8, 2021, the Complainant filed a Complaint against the Respondent and mailed a copy to the Respondent's official roster address as well as several other addresses. In addition, the Respondent was personally served on November 6, 2021 at the in-patient treatment facility. On November 4, 2021, the panel members of the Professional Responsibility Tribunal (PRT) were appointed and a hearing was set. The hearing was later continued at the request of the Respondent. The hearing was set for March 2, 2022. The scheduling order and date of the hearing was sent to the Respondent at his official roster address as well as to his counselor on his behalf at the in-patient treatment center. The Respondent never filed an Answer to the Complaint and the Complainant moved to have the allegations therein deemed admitted.

¶5 At the March 2, 2022 hearing, two of the three panel members were present and conducted the hearing. The Respondent did not appear. The Complainant presented five witnesses who filed grievances against the Respondent and the OBA Investigator. Upon conclusion of the evidence, the Complainant recommended the Respondent be disbarred. The PRT issued its report on March 31, 2022 finding no meaningful mitigation evidence existed and recommended the Respondent be disbarred from the practice of law and be assessed the costs of this action. This Court issued a briefing schedule on April 1, 2022. The Complainant timely filed its Brief in Chief on April 21, 2022; the Respondent did not file any briefs.

STANDARD OF REVIEW

¶6 In Bar disciplinary proceedings, this Court possesses exclusive original jurisdiction. State of Oklahoma ex rel. Okla. Bar Ass'n v. Holden, 1995 OK 25895 P.2d 707State of Oklahoma ex rel. Okla. Bar Ass'n v. Bolusky, 2001 OK 2623 P.3d 268State of Oklahoma ex rel. Okla. Bar Ass'n v. Kinsey, 2009 OK 31212 P.3d 1186State of Oklahoma ex rel. Okla. Bar Ass'n v. Eakin, 1995 OK 106914 P.2d 644

ANALYSIS

¶7 In the event a respondent fails to answer the complaint, the charges shall be deemed admitted, except that evidence shall be submitted for the purpose of determining the discipline to be imposed. Rule 6.4 RGDP. The Complainant submitted evidence of the five grievances and evidence of the Respondent's indifference to this Bar matter. It further recommended the Respondent be disbarred from the practice of law.

The Grievances:

¶8 The grievances addressed in the Complaint are as follows:

1. Judge Stephanie Jones Grievance: 

¶9 On October 5, 2020, the Respondent entered an appearance to represent Eric Martinez in a criminal matter in Beckham County, Oklahoma. The Respondent failed to appear for a Preliminary Hearing Conference held December 21, 2020. Judge Jones set a new court date for January 11, 2021, and attempted to contact the Respondent by his OBA roster email as well as voicemails regarding the missed court date, but received no response. The Respondent again failed to appear at this court date. Eric Martinez told the court that he had no contact with the Respondent. Mr. Martinez had been in jail for almost two months at this time and the court went ahead and appointed an attorney for him even though the Respondent had entered his appearance and had never withdrawn. On February 11, 2021, the Complainant received a grievance made by Judge Jones. The grievance was mailed to the Respondent at his roster address and he was instructed to respond within twenty days. A second letter was mailed to him in May 2021. Both letters were returned "undeliverable."

¶10 In his July 21, 2021 late response to the grievance, the Respondent did not address the missed court dates. He stated he was not compensated for the representation and the Martinez family wanted a public defender. He also claimed the charges against Martinez had been dismissed. The Complainant claims this statement was false because Mr. Martinez received an eight-year sentence. The only reason an attorney was appointed by the court was due to the Respondent's failure to appear and represent Mr. Martinez.

¶11 The Complainant alleges the Respondent failed to appear in court on two separate occasions after entering an appearance, failed to respond to Judge Jones' notice of missing court dates and failed to communicate with and neglected his client which caused delay to Mr. Martinez's case. Respondent further failed to timely respond to the grievance or fully address the issues in the grievance. The Complainant alleges his conduct constituted violations of Rules 1.3, 3.2, 8.4 (a) and (d) ORPC and Rule 5.2 RGDP.

2. Danny Templeton Grievance: 

¶12 Danny Templeton hired the Respondent to represent him in a civil matter against persons accusing him of embezzlement. He paid the Respondent $9,000 over a period of seven to eight months. He testified there was a written agreement of representation but the Respondent never gave him a copy of the agreement. Once he completed payment, he never heard from the Respondent again. Mr. Templeton tried to contact the Respondent at least a dozen times but was never successful. On March 4, 2020 he sent a grievance to the Complainant. The Complainant sent a copy of the grievance to the Respondent at his roster address and requested he respond within fourteen days. It later sent additional letters to the Respondent after he failed to respond to the grievance. The letters were all returned as "undeliverable." Over a year later, the Respondent sent two emails to the Complainant which included an "unfiled" petition naming Mr. Templeton as plaintiff. The Respondent claimed he had completed the work on the case by drafting the civil suit. He did not state whether there was a fee agreement for his services, the amount of money he had been paid, what work had already been performed, or when it was purportedly performed.

¶13 The Complainant alleges the Respondent failed to represent Mr. Templeton competently and diligently, failed to communicate with him, and failed to file suit to fulfill the job for which he was hired. It determined his conduct was prejudicial to Mr. Templeton's interests. In addition, the Respondent was sixteen months late in responding to the grievance. The Complainant alleges his conduct constituted violations of Rules 1.3, 1.4, 1.5, 8.4 (a) and (d) ORPC and Rules 1.3 and 5.2 RGDP.

3. John Hammans Grievance: 

¶14 John Hammans hired the Respondent on two matters. The first concerned a child support matter for his wife and the second concerned obtaining a medical marijuana license. Mr. Hammans paid the Respondent a total of $8,500 in several installments and he testified that this amount included what was needed to get the license. The Respondent did not perform the work requested. Once the full amount was paid, Mr. Hammans was unable to contact the Respondent. He testified that he tried to contact him over one hundred times with no success.

¶15 Mr. Hammans sent a grievance to the Complainant on March 20, 2020. The Complainant sent the grievance to the Respondent's roster address and requested he respond within fourteen days. An additional letter was sent in April. Each letter was returned as "undeliverable." Another letter was sent in June 2020 informing the Respondent that the matter had been opened for formal investigation. The Respondent responded to this letter. He claimed that he did not want to discuss the child support case because it dealt with Mr. Hammans' wife but he had performed work on the case sufficient to cover the fees. He also said that Mr. Hammans failed to budget for the medical marijuana license fees. Mr. Hammans' testimony refutes both of these statements.

¶16 The Complainant alleges the Respondent failed to diligently and competently represent Mr. Hammans and his wife on the two matters, he failed to communicate with Mr. Hammans, and his neglect was prejudicial to his client's interests. He further failed to timely respond to the grievance and make a full disclosure of his representation. The Complainant alleges his conduct constituted violations of Rules 1.1, 1.3, 1.4, 1.5, 8.4 (a) and (d) ORPC and Rule 5.2 RGDP.

4. Roxanne Jolley Grievance: 

¶17 In June 2018, Roxanne Jolley hired the Respondent to represent her in a collection matter. She paid the Respondent approximately $4,000. No contract of representation was made according to Ms. Jolley and it was her belief that the amount paid would cover the full representation. She testified the Respondent finally filed a petition in the case but made no court appearances and thereafter he went "MIA." She had to eventually hire another attorney to complete the case.

¶18 Ms. Jolley sent a grievance to the Complainant which was received on July 31, 2020. In her grievance she notes how the opposing counsel was also unable to contact the Respondent about the case. The Complainant sent the grievance to the Respondent's roster address on August 4, 2020 and requested he respond within twenty days. An additional letter was sent on May 20, 2021. Each letter was returned as "undeliverable." The Respondent sent a late response to the grievance in July 2021, however, it was unresponsive to the claims made in the grievance and addressed an unrelated matter.

¶19 The Complainant alleges the Respondent failed to diligently and competently represent Ms. Jolley which caused her to hire another attorney, he failed to properly communicate with his client and failed to return any unearned portions of her fee. He further failed to timely respond to the grievance and he did not address matters relating to the grievance. The Complainant alleges his conduct constituted violations of Rules 1.1, 1.3, 1.4, 1.5, 8.4 (a) and (d) ORPC and Rules 1.3 and 5.2 RGDP.

5. Matthew Martinez Grievance: 

¶20 In January 2021, Matthew Martinez hired the Respondent to represent him in the dissolution of a Limited Liability Company (LLC). He paid the Respondent $2,500 as a retainer. There was no written agreement of representation. Mr. Martinez testified that he believed that more money may need to be paid to the Respondent if the dissolution was challenged but there were never any discussions concerning whether the Respondent needed more money. Nothing was filed to dissolve the LLC. He contacted the Respondent to find out what was going on with the dissolution and the Respondent informed him that there was a court hearing and Mr. Martinez needed to sign an affidavit. Mr. Martinez signed a one-page affidavit and over the next several weeks he tried to contact the Respondent to find out what happened in court but never heard anything from the Respondent after that. He attempted to contact the Respondent approximately fifteen to twenty times, including leaving notes with the Respondent's employees at the Respondent's medical marijuana grow business where he had previously met with the Respondent. Mr. Martinez testified that the Respondent never filed anything on his behalf and claimed there was never even a court hearing. Due to this, he was forced to hire another law firm and paid it in excess of $12,000. He also requested the Respondent to refund any unearned portion of the retainer.

¶21 Mr. Martinez sent a grievance to the Complainant which was received on May 10, 2021. The Complainant sent the grievance to the Respondent on May 18, 2021 and requested he respond within twenty days. It was sent to his roster address as well as two other addresses where he may be located but each letter was returned "undeliverable." The Respondent did file a late response in July 2021. He claimed he earned his fee by preparing the affidavit for a Temporary Restraining Order and he also claimed Mr. Martinez wanted him to work for free. Mr. Martinez specifically refuted this allegation stating there was never any communication with the Respondent concerning whether he needed to be paid more money. In fact they had never spoken or otherwise communicated after the Respondent claimed he had to go to court for Mr. Martinez.

¶22 The Complainant alleges the Respondent failed to diligently and competently represent Mr. Martinez, failed to properly communicate with his client and failed to return any unearned portions of his fee. Mr. Martinez was harmed by the Respondent's neglect and was forced to hire another firm to represent him. The Respondent further failed to timely respond to the grievance and he did not fully and fairly address the issues in the grievance. The Complainant alleges his conduct constituted violations of Rules 1.1, 1.3, 1.4, 1.5, 8.4 (a) and (d) ORPC and Rules 1.3 and 5.2 RGDP.

Discipline:

¶23 The factual charges against the Respondent are deemed admitted and we find that the Complainant has presented clear and convincing evidence of the alleged rule violations. Rule 6.4 RGDP; See also State of Oklahoma ex rel. Okla. Bar Ass'n v. Whitebook, 2010 OK 72242 P.3d 517State of Oklahoma ex rel. Okla. Bar Ass'n v. Moon, 2012 OK 77295 P.3d 1Id. Discipline is imposed to maintain these goals rather than as a punishment for the lawyer's misconduct. State of Oklahoma ex rel. Okla. Bar Ass'n v. Townsend, 2012 OK 44, ¶31, 277 P.3d 1269State of Oklahoma ex rel. Okla. Bar Ass'n v. Pacenza, 2006 OK 23136 P.3d 616State of Oklahoma ex rel. Okla. Bar Ass'n v. Miller, 2020 OK 4461 P.3d 187Id.

¶24 Throughout the investigation of this Bar matter the Respondent has repeatedly failed to provide any meaningful cooperation with the Complainant. The Respondent failed to timely, fully and fairly respond to the grievances, he failed to appear at the scheduled deposition after being personally served with a subpoena duces tecum and he failed to answer the Complaint after being personally served. The disciplinary hearing was rescheduled at his request yet he also failed to appear for the hearing. In addition, his license was suspended in June 2022 for failure to pay his Bar dues and complete required MCLE credits.

¶25 The PRT Report found the Respondent's conduct brought discredit upon the legal profession. It determined the Respondent retained $24,204 of unearned legal fees and he abandoned each of his clients. He failed to communicate with this clients or to provide the necessary attention and preparation for their legal needs. It found his conduct caused harm to his clients. In addition, the PRT acknowledged his lack of cooperation with the Complainant and noted he also failed to keep his OBA roster information current and accurate.

¶26 In our recent opinion, State of Oklahoma ex rel. Okla. Bar Ass'n v. Scott, we found that the appropriate discipline for similar attorney misconduct varied from a suspension of two years and one day and disbarment. 2022 OK 1502 P.3d 1101Scott we first reviewed our opinions that imposed the discipline of suspension from the practice of law for two years and one day. The two cases reviewed were State of Oklahoma ex rel. Okla. Bar Ass'n v. Whitebook, 2010 OK 72242 P.3d 517State of Oklahoma ex rel. Okla. Bar Ass'n v. McCoy, 2010 OK 67240 P.3d 675

¶27 In Whitebook, an attorney was hired by two separate clients for work on probate matters. This Court found Whitebook failed to act with diligence in representing his clients, failed to keep his clients reasonably informed, failed to promptly comply with reasonable requests for information, and failed to charge a reasonable fee. Id. ¶17, 242 P.3d at 521. In addition, we found Whitebook was given notice and personal service of every stage of the proceedings but failed to appear for one of two depositions, failed to file an answer to one of the grievances, and failed to appear for the disciplinary hearing. Id. ¶¶7-9, ¶20-21, 242 P.3d at 519-520, 522. We held these actions warranted additional discipline. Id. ¶26, 242 P.3d at 523. Whitebook received a suspension of his license to practice law for two years and one day.

¶28 In McCoy an attorney was faced with numerous counts of professional misconduct including, retaining unearned fees, failure to communicate with clients, and lack of diligence in his representation of his clients. In addition, McCoy admitted to not timely and adequately responding to several of the grievances filed against him. McCoy, 2010 OK 67Id. ¶¶ 26, 31, 240 P.3d at 685. We noted that although such mitigating evidence might serve to reduce an actor's ethical culpability, it will not immunize one from imposition of disciplinary measures necessary to protect the public. Id. ¶25, 240 P.3d at 685-86. McCoy received a suspension of his license to practice law for two years and one day. Id. ¶44, 240 P.3d at 690.

¶29 Next, the Scott Court reviewed State of Oklahoma ex rel. Okla. Bar Ass'n v. Rowe, 2012 OK 88288 P.3d 535Rowe, an attorney was charged with eight counts of professional misconduct. The alleged misconduct included neglect of client matters, failure to keep clients informed, failure to respond to lawful demands for investigation, and refusal to refund unearned client fees. Id. ¶¶2-18, 288 P.3d at 536-41. The PRT recommended a suspension of her law license for two years and one day. The OBA recommended a discipline in excess of the PRT recommendation. We determined Rowe was given due and ample notice of the proceedings and charges against her but did not answer or appear to present a defense. Id. ¶21, 288 P.3d at 540-41. We did note, however, that she appeared for one deposition but failed to bring the subpoenaed documents. Id. This Court agreed with the findings of the PRT that Rowe failed to provide competent representation, act with reasonable diligence in representing her clients, failed to keep her clients reasonably informed, and actively misled them about the status of their cases. Id. ¶22, 288 P.3d at 541. In addition, we found she failed to timely and adequately respond to the grievances, answer the formal complaint filed against her, and failed to provide materials requested by the complainant. Id. We determined her conduct "indicates a disregard of and indifference to her clients, to her law practice, to the rules of this Court and to the disciplinary process." Id. ¶31, 288 P.3d at 542. In formulating her discipline, we were particularly disturbed by the fact that Rowe was aware of the charges against her and the recommended discipline but did not respond to the complaint or appear at the disciplinary hearing to assert any mitigating matters. Id. We held her conduct warranted disbarment. Id.

¶30 In Scott the complaint consisted of two counts and the OBA made numerous unsuccessful attempts to contact Scott. This included sending the grievances, a hearing notice and the complaint to Scott's official roster address, last known address, and his last known post office box. Scott, 2022 OK 1Id. We determined the OBA had met all its required obligations to notify Scott pursuant to Rule 6.3 RGDP. Id. ¶¶5-6, 502 P.3d at 1104-05. We held the OBA had established by clear and convincing evidence that Scott engaged in misconduct, which included, failure to diligently represent his clients, failure to communicate with his clients, and failure to respond to a lawful demand for information from a disciplinary authority. Id. ¶¶17, 23, 502 P.3d at 1107, 1109. Further, his failure to cooperate with the disciplinary proceedings was found to show a flagrant disregard for his obligation as an attorney and disrespect for his clients as well as this Court. Id. ¶24, 502 P.3d at 1109. Such actions demonstrated "a clear indifference as to whether he maintains his ability to practice law in Oklahoma and reflect his inability to do so in a manner consistent with the standards of the Bar." Id. We noted that at least in Whitebook and McCoy some modest overtures of cooperation with the disciplinary proceedings were made. Id. ¶29, 502 P.3d at 1110Id.

CONCLUSION

¶31 In the present case, the Complainant has established by clear and convincing evidence the Respondent's professional misconduct. In addition, the Respondent has shown the same indifference to these proceedings and the authority of this Court as found in Rowe and Scott. Although he made a very untimely attempt to respond to the grievances, his responses were not adequate. The Respondent was personally served with a subpoena duces tecum and failed to appear for the deposition and bring the requested documentation. He was later personally served with the Complaint but failed to answer or later appear at the disciplinary hearing which had been rescheduled for his convenience. The Respondent's failure to cooperate with these disciplinary proceedings coupled with his current suspension of his license shows a clear indifference to maintaining his ability to practice law in Oklahoma. We hold the appropriate discipline is disbarment. The Respondent is also required to comply with Rule 9.1

ASSESSMENT OF COSTS

¶32 On March 31, 2022, the Complainant submitted an Application to Assess Costs of the disciplinary proceedings, totaling $1,784.33. Pursuant to Rule 6.16

RESPONDENT DISBARRED AND ORDERED TO PAY COSTS

ALL JUSTICES CONCUR

FOOTNOTES

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete, or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action.

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

A lawyer shall act with reasonable diligence and promptness in representing a client.

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
(3) keep the client reasonably informed about the status of the matter;
(4) promptly comply with reasonable requests for information; and
(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

(a) A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter, and, if there is a recovery, showing the remittance to the client and the method of determination.

(d) A lawyer shall not enter into an arrangement for, charge, or collect:

(1) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or
(2) a contingent fee for representing a defendant in a criminal case.

(e) A division of a fee between lawyers who are not in the same firm may be made only if:

(1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;
(2) the client agrees to the arrangement and the agreement is confirmed in writing; and
(3) the total fee is reasonable.

A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

It is professional misconduct for a lawyer to:

. . . .

(d) engage in conduct that is prejudicial to the administration of justice;

Service of any and all correspondence, notices, and any formal complaint, in connection with proceedings under these Rules, whether before or after the filing of a formal complaint, may be made upon the respondent lawyer or applicant for reinstatement in person or by mail directed to the respondent or applicant at the last address shown on the official roster of the Oklahoma Bar Association, unless and until the respondent or applicant, or counsel for the respondent or applicant, shall cause to be delivered to the General Counsel a notice reflecting a different address. Oklahoma Bar Association members are required to provide a current address to the Association and to inform the Association of any changes in address in accordance with the requirements of the Rules Creating and Controlling the Oklahoma Bar Association. Proof of mailing to the respondent or applicant at such address shall be sufficient to prove service. Except as otherwise specifically provided in these Rules, service may be made by regular mail.

The respondent shall within twenty (20) days after the mailing of the complaint file an answer with the Chief Justice. The respondent may not challenge the complaint by demurrer or motion. In the event the respondent fails to answer, the charges shall be deemed admitted, except that evidence shall be submitted for the purpose of determining the discipline to be imposed.

When the action of the Supreme Court becomes final, a lawyer who is disbarred or suspended, or who has resigned membership pending disciplinary proceedings, must notify all of the lawyer's clients having legal business then pending within twenty (20) days, by certified mail, of the lawyer's inability to represent them and the necessity for promptly retaining new counsel. If such lawyer is a member of, or associated with, a law firm or professional corporation, such notice shall be given to all clients of the firm or professional corporation, which have legal business then pending with respect to which the disbarred, suspended or resigned lawyer had substantial responsibility. The lawyer shall also file a formal withdrawal as counsel in all cases pending in any tribunal. The lawyer must file, within twenty (20) days, an affidavit with the Commission and with the Clerk of the Supreme Court stating that the lawyer has complied with the provisions of this Rule, together with a list of the clients so notified and a list of all other State and Federal courts and administrative agencies before which the lawyer is admitted to practice. Proof of substantial compliance by the lawyer with this Rule 9.1 shall be a condition precedent to any petition for reinstatement.

The costs of investigation, the record, and disciplinary proceedings shall be advanced by the Oklahoma Bar Association (or the Professional Responsibility Commission, if provision therefor has been made in its budget). Where discipline results, the cost of the investigation, the record, and disciplinary proceedings shall be surcharged against the disciplined lawyer unless remitted in whole or in part by the Supreme Court for good cause shown. Failure of the disciplined lawyer to pay such costs within ninety (90) days after the Supreme Court's order becomes effective shall result in automatic suspension from the practice of law until further order of the Court.