STATE ex rel. OKLAHOMA BAR ASSOCIATION v. CLARK
2023 OK 27
Case Number: SCBD-7291
Decided: 03/28/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2023 OK 27, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

STATE OF OKLAHOMA ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,
v.
KIMBERLY N. CLARK, Respondent.

BAR DISCIPLINARY PROCEEDING

¶0 Complainant, State of Oklahoma ex rel. Oklahoma Bar Association, charged Respondent, Kimberly N. Clark, with eight counts of professional misconduct. The Trial Panel recommended Respondent be suspended for two years and one day. We hold there is clear and convincing evidence that the totality of Respondent's conduct warrants disbarment. Respondent is ordered to pay the costs as herein provided within ninety days after this opinion becomes final.

RESPONDENT DISBARRED AND ORDERED TO PAY COSTS.

Katherine M. Ogden, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Kimberly N. Clark, Tahlequah, Oklahoma, Respondent/Pro Se.

ROWE, V.C.J.:

¶1 Complainant, State of Oklahoma ex rel. Oklahoma Bar Association initiated disciplinary proceedings pursuant to Rule 6, Rules Governing Disciplinary Proceedings ("RGDP"), 5 O.S.2011 ch. 1, app. 1-A, alleging eight counts of professional misconduct against Respondent, Kimberly N. Clark. Respondent is a member of the Oklahoma Bar Association, not currently in good standing. Her license to practice law is presently suspended for failure to pay dues for 2022. Complainant's allegations arise in part from Respondent's failure to communicate with clients, failure to render requested legal services, and failure to account for the use of fees and return unearned retainer fees. Complainant alleges Respondent's actions are in violation of the Oklahoma Rules of Professional Conduct ("ORPC"), 5 O.S.2011 ch. 1, app. 3-A, and the RGDP and are cause for professional discipline.

Procedural History

¶2 Complainant filed its formal Complaint with the Office of the Chief Justice on July 18, 2022, alleging eight counts of professional misconduct relating to Respondent's failure to provide an accounting or refund of unearned retainer fees, failure to communicate with clients, and subsequent abandonment of said clients. Complainant mailed copies of the Complaint via regular and certified mail to Respondent's official roster address and last known address. Both mailings of the Complaint were returned undelivered. Complainant hired a private process server to effectuate service of the Complaint on Respondent but was unsuccessful.

¶3 On July 22, 2022, the Chief Master of the Professional Responsibility Tribunal ("PRT") appointed a three-member Trial Panel and set the matter for hearing on September 16, 2022. The combined Appointment of Trial Panel Members and Notice of Hearing was sent to Respondent at her official roster address and her last known address via certified mail.

¶4 On September 7, 2022, in light of Respondent's failure to answer the Complaint, Complainant filed a Motion to Deem Allegations Admitted, pursuant to Rule 4.6, RGDP but the PRT denied the motion. In addition, Complainant filed a Notice of Intent to Use Prior Discipline as Enhancement, pursuant to Rule 6.2, RGDP. On September 7, 2022, the Trial Panel conducted a disciplinary hearing on the allegations contained in the Complaint, pursuant to Rule 6, RGDP. Respondent failed to appear at the hearing. On October 25, 2022, the Trial Panel filed its report wherein it recommended that Respondent be suspended from the practice of law for a period of two years and one day.

Due Process

¶5 Respondent's failure to respond to the Complaint and failure to appear at the hearing before the Trial Panel raises questions as to whether Respondent received sufficient notice of these disciplinary proceedings. Rule 6.3, RGDP, sets out the notice requirements following the filing of a Complaint:

At the direction of the Chief Justice, the Clerk shall immediately notify the Chief Master of the Professional Responsibility Tribunal, the President of the Oklahoma Bar Association and the respondent of the filing of a formal complaint. Such notification shall include a copy of the complaint and shall be by regular mail, except that the notice to the respondent shall be sent by certified mail to the respondent's last known address.

¶6 Attached to Complainant's Proof of Attempted Service of Rule 6 Complaint are copies of three certified mailings to Respondent at her official roster address, her last known office address, and an address that was listed on a court pleading filed by Respondent. All three mailings were returned undelivered.

¶7 Complainant also attached an affidavit from the process server, indicating she made three attempts to serve Respondent with the Complaint at her last known address. All attempts and inquiry into Respondent's whereabouts with local persons were unsuccessful. The Presiding Master of the PRT found Complainant complied with the service requirements of Rule 6.3, RGDP. Based on the foregoing, we find that Complainant provided Respondent with the opportunity for a fair and open hearing, but Respondent chose not to avail herself of that opportunity. Complainant more than satisfied its obligation to notify Respondent of the filing of the Complaint under Rule 6.3, RGDP.

Allegations Deemed Admitted

¶8 Respondent was sent notice of the Complaint and hearing by certified mail to three different addresses, by email, and by delivery to her parents. Due to Respondent's failure to respond, Complainant moved to have the allegations deemed admitted pursuant to Rule 6.4, RGDP. The PRT denied the motion to deem allegations admitted after all evidence was presented.

¶9 Rule 6.4, RGDP, provides that if the Respondent fails to file an answer with the Chief Justice within twenty days after mailing of the Complaint, "the charges shall be deemed admitted, except that evidence shall be submitted for the purpose of determining the discipline to be imposed." Rule 6.4, RGDP (emphasis added).See State ex rel. Okla. Bar Ass'n v. Whitebook, 2010 OK 72242 P.3d 517

Standard of Review

¶10 This Court possesses exclusive jurisdiction in Bar Association disciplinary proceedings. State ex rel. Okla. Bar Ass'n v. Holden, 1995 OK 25895 P.2d 707State ex rel. Okla. Bar Ass'n v. Bednar, 2019 OK 12441 P.3d 91State ex rel. Okla. Bar Ass'n v. Green, 1997 OK 39

¶11 Our goals in disciplinary proceedings are to protect the interests of the public and to preserve the integrity of the courts and the legal profession, not to punish attorneys. State ex rel. Okla. Bar Ass'n v. Kinsey, 2009 OK 31212 P.3d 1186Id. ¶ 16, 212 P.3d at 1192 (citing State ex rel. Okla. Bar Ass'n v. Doris, 1999 OK 94991 P.2d 1015Id.

Background

Count I: Brown Grievance

¶12 Dennis Brown, Sr.'s, ("Brown") son was severely injured as a young child, resulting in an enormous settlement award that would care for him for the rest of his life. Subsequently, a guardianship was granted and Brown hired an attorney to perform an annual accounting to assist Brown in the payment of his son's yearly expenses. In March 2019, after complications with another attorney, Brown retained Respondent to perform the annual accounting of the guardianship. However, before the accounting was due, Brown's son passed away, making the annual accounting the final accounting.

¶13 Respondent told Brown that a hearing was set for April 12, 2021, but when he arrived, Brown learned the court date was set for the previous week on April 6, 2021. Subsequently, Brown went to the Baker Law Office

¶14 Brown attempted to follow up with Respondent by calling her numerous times, but Respondent failed to return any of his phone calls. Brown eventually called the law office and learned Respondent no longer worked there. Brown was given an email address to get in contact with Respondent, but she never responded. Through email, Brown terminated Respondent's services and threatened to file a grievance with the Oklahoma Bar Association if his client file was not returned.

¶15 On July 28, 2021, Brown filed a grievance with the Oklahoma Bar Association alleging that Respondent failed to complete an accounting of his son's estate, did not file the petition for probate, and failed to adequately communicate with him during the course of their professional relationship. On August 25, 2021, the grievance was mailed to Respondent along with a letter requesting a response to the allegations. Respondent failed to respond.

Count II: Milburn Grievance

¶16 Chris Milburn ("Milburn") lived in Oklahoma from approximately August 2018 to June 2020. In January 2021, after having moved to Ohio, Milburn was served with divorce papers by his then-wife, Anita Milburn. On January 25, 2021, Milburn hired Respondent to respond to the divorce petition and paid her a $2,000 retainer fee for her services. When Milburn hired Respondent, he stressed the importance of knowing in advance any court dates so he could arrange for travel to Oklahoma. In addition, Milburn requested that Respondent transfer the title of his vehicle and place a lien on his then-wife's bank account. Respondent failed to file a timely response to the divorce petition, did not transfer title of his vehicle, and failed to handle the requested lien.

¶17 Except for a couple of responses, Respondent failed to communicate with Milburn despite numerous emails and phone messages asking for updates on the case. On April 18, 2021, Milburn emailed Respondent expressing his reconsideration of Respondent as his attorney and began searching for a new attorney in the Tahlequah area. After Milburn spoke with another attorney, Respondent emailed Milburn her Motion to Withdraw from the case. Milburn requested a final billing statement which was never provided to Milburn.

¶18 On May 19, 2021, Milburn filed a grievance with the Oklahoma Bar Association alleging Respondent failed to file a timely response in his divorce proceeding, failed to adequately communicate with him, failed to render legal services requested, and failed to provide an accounting after multiple requests. Complainant notified Respondent of Milburn's grievance and requested a response including full disclosure of facts relevant to the circumstances described in the grievance. On July 12, 2021, Respondent provided a response, but failed to include the requested accounting information. Complainant notified Respondent that without the full accounting her response would be insufficient. Respondent did not provide the additional information. As a result, Complainant opened a formal investigation in the matter and requested Respondent respond to the allegations. Respondent failed to respond.

Count III: Sapp Grievance

¶19 In August 2019, Kimberly Sapp ("Sapp") was served with a divorce petition and hired Respondent to represent her. Sapp paid Respondent a $2,000 retainer fee for her services. On November 4, 2019, Respondent and Sapp attended court for a temporary order hearing, to which Sapp was awarded primary custody and temporary possession of the marital residence and her vehicle. Following the hearing, a mediation took place via Zoom on January 18, 2021. A pretrial hearing took place January 20, 2021 to which Sapp claims Respondent failed to inform her of the hearing.

¶20 Following the mediation, Respondent failed to communicate with Sapp. Sapp called the law office and learned Respondent no longer worked at the office. Sapp obtained an email address for Respondent and requested an update on her case and an accounting of funds used, to which she received no response. Sapp spoke with Respondent's legal assistant and set up two separate conference calls with Respondent, but Respondent did not join either phone call. As a result, Sapp emailed Respondent to terminate her services and requested a refund.

¶21 On July 19, 2021, Sapp filed a grievance with the Oklahoma Bar Association alleging that Respondent failed to adequately communicate, failed to provide diligent representation in her divorce matter, and failed to return any unearned fees. Complainant notified Respondent of Sapp's grievance in August of 2021. On January 26, 2022, Respondent refuted Sapp's allegations by letter.

¶22 According to Respondent, during the Zoom mediation the parties agreed that opposing counsel would attend the pretrial hearing without Respondent present to announce the hearing was being stricken, to be reset on application. Respondent alleged Sapp was aware of the pretrial hearing and understood they did not need to appear. Respondent also stated that her legal assistant mistakenly inputted the incorrect date for the scheduled phone call appointment, but Respondent still attempted to make contact that day with no answer from Sapp. Further, Respondent noted that the date the grievance was filed (July 19, 2021) is the same day Sapp emailed Respondent to set up an appointment to discuss the case, which was scheduled for Tuesday, July 20, 2021.

Count IV: Chipps Grievance

¶23 Cody Chipps ("Chipps") hired Respondent for $1,200 to assist him in his divorce proceeding in March 2021. Chipps did not hear from Respondent until two months later when she requested Chipps come to the law office to review the drafted divorce decree. Chipps made some corrections to the decree, to which Respondent stated she would get the corrected version over to him to sign to move forward in the case. Respondent never contacted Chipps thereafter. After taking time to save up another $1,200, Chipps hired new counsel to finalize his divorce.

¶24 On September 19, 2021, Chipps filed a grievance with the Oklahoma Bar Association alleging that Respondent failed to act with reasonable diligence in representing him, failed to communicate with him, and failed to return any unearned retainer fees. On October 5, 2021, the grievance was mailed to Respondent along with a letter requesting a response to the allegations. Respondent failed to respond.

Count V: Stinson Grievance

¶25 Heavenly Stinson's ("Stinson") mother referred Stinson to Respondent after being Respondent's hairdresser for fifteen years. On or around July 9, 2021, Stinson hired Respondent to represent her in a paternity and child support matter and paid her an $800 retainer fee for her services. After hiring Respondent, Respondent requested that Stinson meet her at a local Braums to sign necessary documents to file the case. This meeting was the only time Stinson and Respondent met in-person and it was the last time they spoke.

¶26 On August 17, 2021, Respondent filed a Petition to Establish Paternity and Child Support. After the petition was filed, Stinson was unsuccessful in reaching Respondent. Stinson and her mother attempted to contact Respondent numerous times by calling, but Respondent never answered or returned any phone calls. Stinson retained new counsel, who timely assisted her with her matter.

¶27 On November 25, 2021, Stinson filed a grievance with the Oklahoma Bar Association alleging that Respondent failed to act with reasonable diligence in representing Stinson, failed to reasonably communicate, and failed to return any unearned retainer fees. On December 14, 2021, the grievance was mailed to Respondent and a letter requesting a response to the allegations. Respondent failed to respond.

Count VI: Kinzer Grievance

¶28 Rachel Kinzer ("Kinzer") sought to obtain guardianship over her two minor nieces after their guardian, Kinzer's mother-in-law, passed away. On January 5, 2021, Kinzer hired Respondent to assist her in obtaining the guardianship and paid Respondent $1,500 as a retainer fee for her services. On the same day Kinzer provided Respondent with the documentation regarding the active guardianship in Tulsa County, Respondent filed for a temporary guardianship in Cherokee County District Court.

¶29 In February 2021, Respondent and Kinzer appeared for a hearing where the judge questioned why Respondent did not file the temporary guardianship in Tulsa County where the active guardianship was on file. Respondent subsequently transferred the case to Tulsa County, and a hearing was set in the Tulsa County District Court for June 3, 2021.

¶30 Sometime in March 2021, Kinzer provided background check documents at Respondent's request for the upcoming hearing. At the June court date, Respondent informed the court she failed to submit the background check documents for verification due to her moving offices, which resulted in the hearing being rescheduled to August 24, 2021. Prior to the hearing, Kinzer repeatedly requested updates on the documents, but Respondent rarely responded. Three days before the hearing, Kinzer learned the necessary documents still had yet to be processed and the hearing would need to again be rescheduled. Kinzer requested that Respondent extend the temporary guardianship because it was several months expired. Respondent never filed the extension.

¶31 Kinzer contacted the Tulsa County District Court about the status of her case and discovered several necessary documents were still needed and that nothing was ever filed with the court. On August 26, 2021, Kinzer emailed Respondent asking for an update on the case and informed her that she would like a refund on the unearned retainer if Respondent was unwilling to help her finalize the guardianship. Respondent reassured Kinzer that she would get an update on the matter, but Respondent never provided an update. On October 5, 2021, Kinzer terminated Respondent's services and requested a refund of the paid retainer fee. Kinzer finalized the guardianship on her own.

¶32 On January 11, 2022, Kinzer filed a grievance with the Oklahoma Bar Association, alleging Respondent failed to act with reasonable diligence in finalizing the guardianship, failed to timely communicate with her, and failed to account for or return any unearned retainer fees. On February 7, 2022, the grievance was mailed to Respondent along with a letter requesting a response to the allegations. Respondent failed to respond.

Count VII: Black Grievance

¶33 Tommy Black ("Black") hired Respondent to assist him in modifying his child custody order over his son. Black contacted Respondent sometime in December 2019, but did not meet or pay Respondent until September 2020 due to Covid-19. When they met in September 2020, they discussed Black's proposed modifications. Black called weekly for updates on the case, but Respondent never answered or returned phone calls. In February 2021, Black went to the law office and Respondent apologized for forgetting about him and offered to refund him after she paid her office rent. Black never received a refund and never heard from Respondent.

¶34 On January 27, 2022, Black filed a grievance with the Oklahoma Bar Association, alleging Respondent failed to adequately communicate with him, failed to render legal services requested, and failed to return any unearned retainer fees. On February 14, 2022, the grievance was mailed to Respondent along with a letter requesting a response to the allegations. Respondent failed to respond.

Count VIII: Hampton Grievance

¶35 In December 2020, Paula Hampton ("Hampton") hired Respondent to represent her in a divorce proceeding and paid her a $1,500 retainer fee for her services. After unsuccessful attempts to contact Respondent after hiring her, Hampton discovered that Respondent had moved out of her office. Hampton texted a phone number she was given to contact Respondent. Hampton explained in her text that Respondent had taken her case the previous December, but she had not heard anything from her since then. After several messages back and forth and an attempted phone call appointment, Hampton and Respondent discussed meeting for Hampton to sign some documents. On October 1, 2021, Hampton met Respondent's legal assistant in Fort Gibson to sign papers that Hampton believed would be served on her then-husband. Hampton requested updates on the case with no success.

¶36 After receiving no updates on her case, Hampton called Respondent, where she admitted to losing Hampton's previously executed documents. On December 21, 2021, Hampton showed up at the courthouse with the belief she had a hearing scheduled, but learned on arrival that no court date was ever set for her matter. Hampton requested the judge's secretary call Respondent to which Respondent later appeared and apologized. Respondent assured Hampton that she would finalize her case, but she did not perform any further work on the matter. Respondent never informed Hampton that her case had been dismissed in July, 2021.

¶37 On January 18, 2022, Hampton filed a grievance with the Oklahoma Bar Association, alleging Respondent failed to adequately communicate with her client, failed to provide diligent representation, failed to render requested legal services, and failed to account or refund any unearned retainer fees. On April 27, 2022, the grievance was mailed to Respondent along with a letter requesting a response to the allegations. Respondent failed to respond.

Additional Facts

¶38 During the PRT hearing, Complainant called District Judge Douglas Kirkley as a witness. Judge Kirkley testified about his interactions with Respondent when she appeared before him while he was a special judge. He noted that when Respondent came before him, she was competent, prepared, prompt, and was a good advocate for her clients. When Judge Kirkley was elected as the presiding judge over the East Central Judicial District, he met with Respondent and other local attorneys about the qualifications to become a contracting attorney for the deprived docket. Respondent met the qualifications and became one of the contracting attorneys.

¶39 Beginning in 2019, other judges reported to Judge Kirkley their concern with Respondent's habitual tardiness. Judge Kirkley testified that he and other judges reached out to Respondent offering assistance. During the conversation, Respondent was apologetic but did not detail as to what was contributing to her tardiness. Later, it was noted that Respondent went from being tardy to not showing up to court at all. Due to voiced concerns of Respondent's behavior, Judge Kirkley issued a show cause order to determine whether Respondent breached her contract with the Cherokee County District Court. Respondent was notified of the show cause order with email, letters sent to her office and home address, and a phone call made to her mother. Judge Kirkley conducted a hearing on May 5, 2022, a day Respondent was scheduled to appear for a hearing on behalf of a client. Respondent did not appear for either hearing. Based upon the evidence presented, Judge Kirkley determined Respondent breached her contract due to nonfeasance.

¶40 Additionally, Krystal Willis, an investigator for the General Counsel of the Oklahoma Bar Association, was called as a witness at the PRT hearing. Willis testified that Complainant sent Respondent a copy of each grievance along with a letter indicating that Complainant had opened a formal investigation into the allegations and that Respondent was required to respond to the allegation within twenty days pursuant to Rule 5.2, RGDP. At some point Complainant was on notice that Respondent moved and began sending letters to Respondent's new address in addition to the official roster address on file with the Oklahoma Bar Association.

¶41 In these letters, Complainant requested that Respondent specifically address the listed rule violations of the ORPC and RGDP. Willis testified that when Respondent did not respond to the initial letter, Complainant mailed a second letter requesting a response be provided within five working days or further action would be taken, including the issuance of a subpoena requiring her sworn testimony and production of records relevant to the allegations. Respondent did not provide a response for the Brown, Milburn, Chipps, Stinson, Kinzer, Black, or Hampton grievances.

¶42 Willis testified that after not receiving a response from Respondent to several grievances in 2021, Respondent was subpoenaed for deposition in December 2021, but service on Respondent was unsuccessful. Willis noted that she was able to get in touch with Respondent on December 20, 2021 and learned Respondent felt burned out and overwhelmed with her caseload. During their conversation, however, Respondent would not detail what was happening with her personally at that time despite Willis's probing effort. In a follow-up email to Respondent on December 20, 2021, Willis extended the due date for the grievance responses to January 18, 2022, reminded her what to include in each response, and advised her to get in contact with Lawyers Helping Lawyers.

¶43 Through the end of March 2022, Willis continuously emailed and called Respondent to check in with her to no avail. Complainant sent a final email on August 8, 2022 informing Respondent of the consequences of the impending disciplinary proceeding.

Discussion

¶44 Respondent stands accused of violating Rules 1.1, 1.3, 1.4, 1.5, and 1.15, ORPC and Rules 1.3 and 5.2, RGDP. Rule 1.1 requires that a lawyer provide competent representation to a client.

¶45 Rule 1.3 requires that a lawyer act with reasonable diligence and promptness in representing a client.

¶46 Each of Respondent's clients attempted to contact Respondent for months regarding updates on their cases to no avail, forcing them to hire new counsel or complete the legal matter on their own. Notably, in both the Hampton and Black grievance, Respondent admitted to forgetting about them.

¶47 Rule 1.5 concerns the fee a lawyer may charge a client. In several instances Respondent was paid a retainer fee but never performed any work on her client's behalf. In the Chipps grievance, Respondent received a $1,200 retainer fee, prepared initial paperwork for Chipps' divorce, but never filed anything with the court. In the Stinson grievance, Respondent received an $800 retainer fee, met with Stinson to sign paperwork for her paternity and child support case, but never served the father. In the Black grievance, Respondent received a $700 retainer fee to modify Black's child custody order but never filed a motion to modify. In the Hampton grievance, Respondent received a $1,500 retainer fee, met with Hampton to sign documents for her divorce, but never performed any work on the matter resulting in the dismissal of Hampton's case. The evidence presented as to these grievances demonstrate by clear and convincing evidence that Respondent collected an attorney fee for which she performed no work, in violation of Rule 1.5, ORPC.

¶48 Rule 1.15 relates to a lawyer's duties in safekeeping client property. Specifically, Rule 1.15 requires a lawyer to deposit a client's retainer into a client designated trust account, to which those fees are only withdrawn once earned or expenses incurred. Rule 1.15(a) and (c), ORPC.

¶49 Complainant accuses Respondent of violating Rule 1.15(d). In relevant part, Rule 1.15(d) requires a lawyer to "promptly render a full accounting" of client funds upon request of the client.

¶50 Although Complainant did not raise the issue, we find that Respondent's conduct also implicates Rule 8.1(b), ORPC. Rule 8.1(b), ORPC, prohibits a lawyer from failing to respond to a lawful demand for information from a disciplinary authority.

¶51 Rule 8.4(a), ORPC, prohibits a lawyer from violating or attempting to violate the Rules of Professional Conduct, knowingly assisting or inducing another to do so, or doing so through the acts of another.

¶52 Based on the foregoing, we find that Complainant has established by clear and convincing evidence that Respondent engaged in misconduct in violation of Rules 1.1, 1.3, 1.4, 1.5, 1.15(d), 8.1(b), and 8.4(a), ORPC, and Rules 1.3 and 5.2, RGDP.

Aggravating and Mitigating Circumstances

¶53 Respondent's failure to participate in the disciplinary proceedings to any extent has left us without any evidence to consider in mitigation. However, evidence was presented that demonstrates Respondent's clear indifference to maintaining her law license and reflects her inability to do so in a manner consistent with the standards of the Oklahoma Bar Association. Respondent has come to display a pattern of failing to communicate with clients and failing to render requested legal services. In 2017, Respondent was issued a private reprimand by the Professional Responsibility Commission ("PRC") for failing to make initial disclosures as ordered and failing to respond to a judge's show cause order as to why the case should not be dismissed. Respondent's actions violated Rule 1.3, 1.4, and 1.16, ORPC. The PRC agreed to forego the filing of formal charges against Respondent in exchange for her successful completion of a diversion program. The record reflects she accepted the reprimand and completed the program.

¶54 Furthermore, Respondent is not presently in good standing with the Oklahoma Bar Association. Her license is currently suspended for failure to pay dues. By failing to cooperate with these disciplinary proceedings, Respondent has shown a flagrant disregard for her obligations as an attorney and disrespect for her clients and the Court.

Discipline

¶55 Our goals in bar disciplinary matters are to protect the interests of the public and preserve the integrity of the legal profession, not to punish attorneys. Kinsey, 2009 OK 31State ex rel. Okla. Bar Ass'n v. Stewart, 2003 OK 1371 P.3d 1State ex rel. Okla. Bar Ass'n v. Taylor, 2003 OK 5671 P.3d 18

¶56 Complainant and PRT recommend that Respondent should be suspended for two years and one day. A suspension of two years and one day is tantamount to disbarment in that the suspended lawyer is required to follow the same procedures for readmittance as a disbarred lawyer in reinstatement proceedings under Rule 11.1, RGDP, 5 O.S.2001, ch. 1, app. State ex rel. Okla. Bar Ass'n v. Passmore, 2011 OK 90264 P.3d 1238

¶57 In State ex rel. Oklahoma Bar Association v. Whitebook, 2010 OK 72242 P.3d 517Id. ¶¶ 4-6, 242 P.3d at 519. In addition, the attorney failed to appear for one of two depositions, failed to file an answer to one of the grievances, and failed to appear for the disciplinary hearing. Id. ¶¶ 7-9, ¶ 20-21, 242 P.3d at 519-20, 522. We noted that, "[w]hen a lawyer places so little value on his license to practice law and shows no desire to protect his license, he should be forced to appear before this Court pursuant to rule 11 of the RGDP to show why he should again be allowed to practice law." Id. ¶ 26, 242 P.3d at 523.

¶58 Conversely, in State ex rel. Oklahoma Bar Association v. Scott, 2022 OK 1502 P.3d 1101Id. ¶¶ 2-3, 502 P.3d at 1104. In light of the attorney's misconduct, we found that he should be disbarred from the practice of law. Id. ¶ 29.

¶59 In State ex rel. Oklahoma Bar Association v. Kaufman, 2022 OK 69522 P.3d 487Id. ¶ 24. We found the attorney's misconduct warranted disbarment of his license to practice law because "[his] failure to cooperate with these disciplinary proceedings coupled with his current suspension of his license shows a clear indifference to maintaining his ability to practice law in Oklahoma." Id. ¶ 31, 522 P.3d at 496.

¶60 Respondent has displayed a pattern of client neglect. In addition, her failure to respond to requests for information demonstrates indifference to her clients as well as "blatant disregard for the disciplinary process and for the Court." State ex rel. Okla. Bar Ass'n v. Bellamy, 2012 OK 20273 P.3d 56

Assessment of Costs

¶61 On October 25, 2022, Complainant filed an application to assess the costs of the disciplinary proceedings, totaling $2,463.78, to Respondent. Respondent did not file an objection to the application. Rule 6.16, RGDP, provides that in disciplinary proceedings where discipline results, "the cost of the investigation, the record, and disciplinary proceedings shall be surcharged against the disciplined lawyer unless remitted in whole or in part by the Supreme Court for good cause shown." Respondent is hereby ordered to pay costs in the amount of $2,463.78 within ninety days of the effective date of this opinion.

RESPONDENT DISBARRED AND ORDERED TO PAY COSTS. 

ALL JUSTICES CONCUR.

FOOTNOTES

"(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
(3) keep the client reasonably informed about the status of the matter;
(4) promptly comply with reasonable requests for information; and
(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Q: "Did she tell you anything about your case or why she hadn't been talking to you?
A: No. She apologized again because she forgot about me." Tr. 121:14-18.

(c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

A: That would appear to be the case. It also seems like I didn't have enough information. Like, I needed a ledger or something to know for sure that these funds were not client funds. I just -- I didn't see it. I just didn't see it. Like I would say, yeah, she probably didn't, you know, deposit client funds, these client funds into the account aside from that one from Rachel Kinzer, but it's like I'm not 100 -- I can't feel like -- I don't feel like I can be 100 percent sure of it." Tr. 192:-18-25; 193:1-6.

"Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property." Rule 1.15(d), ORPC.

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
....
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
....

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.